Mr. Justice Thimble
 

 delivered the opinion of the Court.—
 

 This was an action of ejectment, originally instituted in a Circuit Court of the state of Missisippi.
 

 Upon'the'trial of the cause, i'n the Court of original jurisdiction, the de&ndant excepted.-to the opinión of the Court, in overruling instructions moved on his part, to be given to the .jury, and also.to the instructions given by the Court, at the trial of the cause.
 

 ; In the bill of exceptions tendered by the plaintiff in error in thé Court below, are inserted the titles of the parties to the land in controversy, • and the facts, upon which the questions of law arise, which were decided by the-Court. ’ A verdict and judgment were rendered against the defendant, from which he appealed to the Supreme Court of the state, being the highest Court of law therein, where the judgment was affirmed; and the case is now brought before this Court, by writ of error to the Supreme Court of the.state.
 

 The material facts o.f the ca'se aye the following: The lessors. of the plaintiffs in the action of ejectment, claimed the land in controversy under and by virtue of a patent from the United States, dated the 13th day of October 1820, which was given in evidence. This patent emanated upon a certificate of the Board of Commissioners west of Pearl river, organized under the provisions of the Act of Congress, of the 3d of March 1803, , entitled “An Act regulating the grants of land, and providing
 
 *663
 
 {or the disposal of the lands of the United States* south of the state of Tennessee;”'which certificate was also given in evi- ■ dence, and bears date the 13th d'ay of February 1807. The important parts of the certificate are in the following words, to wit: Joseph White claims a tract of six hundred and forty acres of land, situated in Claiborne county, on the waters of Bayou Pierre, by virtue of the occupancy of the. claimant on and be-' fore- the 30th day of March, in the year one thousand seven hundred and ninety-eight. We certify-that the said Joseph White is entitled to a patent therefor, from the United States, by virtue of the recited-Act.”
 

 ' The defendant claimed and held possession of the land, under and by virtue of a patent from the United States, dated the 12th day of August 1819, for 553 acres of land. This patent is founded upon a purchase at the general sale of the lands of, the. United States, at Washington-, Mississippi; under the authority of the before recited Act of Congress.
 

 Upon this state of facts, the counsel for the defendant moved the Court, to instruct the jury'; “That in such' a case, the older patent of the defendant under which he claimed possession, should prevail in the' action of ejectment, in a-Court of Law,, against the said junior patent of the plaintiff; although the said junior patent of the plaintiff emanated upon a prior, certificate of the Board of Commissioners, west oi Pearl river; but the Court refused to give such instructions in point of law to the jury, but on the contrary, instructed them, .that the junior- pa-"' tent of the said plaintiff, emanating upon a certificate-of a .donation claim, prior in date to the patent under which the defendant claims, would overreach the patent of the defendant, and in point of law should prevail against such prior patent of' the defendant.”
 

 These opinions having oeen affirmed upon appeal to the Supreme Court of the state, the object of this writ of error is to. have them reviewed in this Court.
 

 ' It has been objected, that this Court- has not jurisdiction of the case.' By the second section of the third article of th’e Constitution, it is declared, “That the judicial power shall extend to all cases arising under this Constitution, the laws of the United States a.nd treaties made, or to be made under their authority, &c.” By-the 25th section of the -Judiciary Act of 1-789,'made in pursuance of this provision of the Constitution, it is enacted “That a final judgment-or decree in any suit, in the highesr Court of law or equity of a state in which a decision ih the suit could be had, where is drawn .in question the construction of any statute of the United States, and the decision, is against the title or right, &c., specially set up or claimed by either party, &c., under'such statute, &c.. may be. re-examined and re
 
 *664
 
 yei'sed. or affirmed,, by.the Supreme Court of the United States, upqn a writ of error.”
 

 In this case, the titles.of both parties aré derived under an .Act of'-Congress; the construction of the statute is drawn directly in question; and the depisioB'of the highest Court of Law of the state, is against title
 
 fckd.
 
 right of the party, specially set up in his, defence under,the statute. This case is pot distinguishable from the case of Matthews
 
 vs.
 
 Zane, 4
 
 Cranch,
 
 382, in which the^jm-isdietton .of this Court was maintained.'
 

 • For' the plaintiff in error, it is argued, that the state Court erred in deciding that the elder grant should not prevail in the action of ejectmept. •
 

 It ^ undoubtedly true, that upon common.law principles the legal title should' prevail in the action of ejectment, upon the sqme grounds that the legal right prevails in Other actions in Courts of Law.. It is so held in those states in which the principles of the common law are carried into full'effect, and the. course of proceeding in the action of' ejectment are according to >those principles.. In the states where these principles prevail, it is held,-that in a tribal at law the Courts will not look behind, or beyond'-'a grant, to the rights upon which it is founded ; nor examine the progressive stages of the title, antecedent to the. grant..
 

 But in'other states, the Courts of Law proceed upon other principles.- In the action .of ejectment, they lqok beyond the grant, and examine the progressive stages of the'title, from its incipient state, whether by warrant,, survey, entry, or certificate, until its final consummation by grant; and if found regular and according to', law, in.these progressive- stages, the .grant is held to relate back to the inception of the right and to have dignity accordingly."
 

 This latter course, seems to be the ouc adopted and pursued by the Courts of Mississippi. ' .It is enough for us to say, that in so doing, and in applying their peculiar mode of proceeding to titles derived through and under the laws of the'United States, they violated no provisions of any statute,of the United States. •
 

 • The important question in the case is this: In applying its own principles and practice in the-action of ejectment, as might well be done to this case, has the Court misconstrued the Act of Congress, in deciding that the grant of the plaintiff, emanating upon the donation certificate of the .Board of Commissioners, west of Pearl river,' set forth in the record, would overreach the defendant’s grant, and should prevail against-it in the action. o£ ejectment? •
 

 ' This draws in question the construction of the Act of Congress of 1803, and gives this Court jurisdiction -of the case.
 
 *665
 
 It is well known, that prior to the
 
 treaty of
 
 San Lorenzo, of the 27th of, October 1795, controversies had long existed between the United States and his Catholic Majesty, on the subject of the boundaries which separated the United States, and the Spanish provinces of East and'West Florida. The second article of that treaty declares “That the southern bound-, ary of the United States, which divides their territory from the Spanish colonies of East and West Florida, shall be designated by a line beginning on the Mississippi river, at the northernmost part of the thirty-first degree of latitude, north of the equator, which, from thence, shall be drawn due east to ihe middle of the river Appalachicola,” &c. And it is agreed, that if there should be any ■ troops, • garrisons, or settlements ■ of either party, in the territory of the other, according to the above mentioned boundaries, they'should be withdrawn from the said territory, within the term of six months, after the ra tification of this treaty, or sooner if it be possible.
 

 It is matter of public history, that there were Spanish troops, garrisons, and settlements north of this boundary, and. within the territory of the United States; which were not withdrawn, till long after the time stipulated by the'treaty. .
 

 By the second section of the before recited Act of Congre,ss,,bf the 3d of March 1803, it is enacted “ That to every person, or. to the'legal representative or representatives of every person, who, either being the head of a family, or of twenty-one years of age, did, on that day of the year 1797, when the Mississippi" territory was finally evacuated by the Spanish troops, actually inhabit and cultivate a tract of land in the said territory, &c. the said tract of land thus inhabited "and- cultivated, shall be granted, provided, however, that not more than one tract shall be thus granted toimy one person, and the same.shall not contain more than 640 acres; and provided that this donation shall not be made to any person, who'claims any other tract of land in the said territory, by virtue of any British, or 'Spanish, grant, or order of survey.”
 

 The sixth section of the Act provides for the establishment of Vwo Boards of Commissioners, one east and the other west of Pearl river, in said territory;
 
 Ci
 
 for the purpose of ascertaining the rights.of persons claiming the benefit of the articles.of agreement and cession between the United States and state of Georgia, or of the three first sections of this Act. And each Board, or a majority of each Board, shall, in their respective districts, have power to hear and decide in a summary manner, all matters respecting such claims-; also to administer oaths and examine witnesses, and such other testimony, as may be addficed, and to determine thereon, according to justice and equity; which determination, -sp far as relates to any rights
 
 *666
 
 derived from the articles of agreement aforesaid, or from the ' three first sections of this Act, shall be final.” ’ ■
 

 Thé eleventh section provides “ That the. lands. for which-certificates of any description whatsoever shall have been granted by the commissioners, in.pursuánce.-of the provisions of this Act, shall, as-soon as may be* be■surveyed.. And the •said surveyor shall cause all the other lands. of the United States, in the Mississippi .territory, to be surveyed.”
 

 And the twelfth section provides, that all the lands afore-., said, not otherwise disposed of or excepted, by virtue of the . provisions of the preceding sections of this Act, shall (with certain other reservations and exceptions) be offered for sale.
 

 As' such. lands only were .authorized to .be offered for- sale, as had not been appropriated by the previous sections of the law, and certificates granted by the commissioners, in pursuance thereof; it follows,’. incontestably,' that' the right of -the plaintiff in. fhe ejectment, derived from a donation' certificate j is superior to that of the defendant;-derived from a purchase at the sales, unless there is some fatal infirmity in the certificate, which,renders it void'. This has not been contested.
 

 But it is objected to this certificate:—
 

 1. That it is not a donation certificate.
 

 2. That it is not sufficiently precise, and does not aver all the facts necessary to authorize the commissioners, to grant a certificate.
 

 3. The period of occupancy, is alleged to be- the 30th of March. 1798.
 

 The answer to the first objection is; that the certificate is granted- for 640 acres of. lgnd, .the precise quantity for which a donation certificate was authorized.
 

 This is sufficient evidence- of the intention of the Board of Commissioners, to grant a donation certificate. The period of occupancy, too, fits the case of a donation certificate, or none; - and, if necessary, fortifies' the conclusion of its being- granted as a donation certificate.
 

 To the second objection, it may be ans.weredj that the law requires no precise form in the. certificate- It is'sufficient, if the proofs be exhibited to the Board of Commissioners, to satisfy them of the'facts entitling the party to the certificate; The facts need not be spreád upon the record. It is sufficient, if the consideration, to wit, the occupancy,' and the quantity granted, appear
 

 •Nothing' more is necessary to. certify to tne government of the party’s right; or to enable him, after it is surveyed by the proper officer, to obtain a patent.
 

 The .objection, that the occupancy is stated to be bn the 30th of March 1798, produces more difficulty
 

 
 *667
 
 The language of the second section of the Act of Congress,! authorizing these donation claim,s, is, that the persons, who
 
 on that day of the year
 
 1797,
 
 when
 
 the Mississippi territory
 
 was finally Evacuated
 
 by the Spanish troops, &c. '
 

 This language is very peculiar, and shows plainly, that, although Congress at the time of passing the law was certain of the
 
 fact
 
 of evacuation by the .Spanish troops, that body wa& not informed of the precise time when the evacuation took place.
 

 ■ The law was intended to confer a bounty on a numerous cláss,óf- individuals; and in construing the ambiguous words of-the Section, it is .the duty of the Co'urt to adopt that construction which,wilLbest effect the.liberal intentions of the legislature.
 

 To interpret this .section literally* that land should be granted to-those, Who, on'the same day .of the year 1797 occupied a, tract, of land? provided the Spanish' troops finally evacuated the territory, and on that very day of that very year 1797, would totally defeat the operation of the law, and the bounty intended by. it; if it should have happened, that the final evacuation of the territory, by the Spanish troops, took' place on the-first day of. January 1798; or on any subsequent day.
 

 If an individual had inhabited and cultivated a tract of land eVery day in the year 1797, still, according to the letter of this section, he was not entitled to the bounty of. the' government, because the Spanish troops had pot evacuated the territory
 
 any day of that year,
 
 but some day of the next year;. and. although the p'arty continued to occupy the land until the day of the actual evacuation, still, he could not be entitled, according to the letter of the Act, because th.at day was not any day of the year 1797.
 

 ■ This- could not be the intention of Congress. The country had been settled during the. conflict on the subject of ■boundaries, between Spain and the United States; by the -citizens arid subjects of both governments. It was a weak and exposed frontier of the United States. The manifest general intent of the Act of Congress, “is to confer a bounty ,uptm the inhabitants and cultivators of the soil, who elected to remain in thd country at the timé of the actual evacuation by the Spanish tróopfe. In .this-view of thé subject, the time of the actual eva-. cuation was very important, but whether it was on some day in the year,1797 or.1798, .was comparatively unimportant.
 

 If the fact be supposed, and it must be supposed for the srike of the argument, that the .actual evacuation took place on the 30th of March, 1791, then something must be . rejected in the construction and interpretation of the-Act-of Congress to make the provisions of the law effectual. Either the 'words
 
 *668
 
 “
 
 of the year
 
 1797” -must be rejected as inconsistent with- the main scope and general intent of .the law, or the claims to donations of all the' inhabitants and cultivators, .west' of Pearl river, must be defeated. This would b,ut defeat the manifest general intent of the law.
 

 It was said at the bar, that all the1 donation certificates west of the Pearl river express to be for occupancy on the 30th day of March, 1798, and a certificate from the commissioners of the' general -land-office, to that effect, was produced. • Tt is not necessary to decide whether we can, or cannot, notice this- certificate .as evidence of the fact that the evacuation took place, on that day, or as evidence of the construction given by the Board of Commissioners west of Pearl river. It is sufficient if they were- authorized to give such construction to the Act, in the evént supposed, that the event happened; or- in other words, that the actual evacuation took place on the SOth of March, 1798, as supposed in the argument; and that the fconstruction of the 2d section of the Act hf .Congress, which we are disposed to adopt, is the true construction in the estimh- _ tiort of Congress itself; we- think,' may fairly be inferred from the Act of Congress df ' the 31st of April, 1806. ' The-4th section'of thatAct provides, that “wherever it shall appear to ■the satisfaction of the register and the receiver of‘the district cast of Pearl river, that the settlement and occupancy, by virtue of which a pre-emption certificate had been granted by thé commissioners, had been made and taken place prior to the 30th of March, 1798, they shall be authorized to grant to the party a donation certificate, in lieu of such pre-emption.”
 

 It appears, from this section, that the commissioners east of Pearl rivér. had adopted the construction of the Act of 1803, contended for by the plaintiff in error; and that, instead of granting donation certificates to 'the inhabitants and settlers, down to the period of the 30th of March, 1798, under the 2d section of the Act, they had granted pre-emption certificates, under the provisions of the 3d section;' Congress treat this as á mistaken construction of the. law, by directing donation certificates to be made out in lieu of the pre-emption certificates.
 

 The Act of 1803 puts the settlers east-and west of Pearl river on precisely the .same footing, and it is inconceivable, that Congress could have any motive for giving those east of Pearl river:any prcference by the Act of 1806; or that the Act could have any other object, than to continue upon, the same footing the settlers, east and west of Pearl river. -
 

 ■ The certificate granted ih the case before, us, is Sufficient evidence that the commissioners -west of Pearl rive! adopted a more liberal construction; such as we think they were war
 
 *669
 
 ranted in adopting, and such as, we think, is manifestly sanctioned by Congress, in the Act of 1806.
 

 It is the opinion of this Court, that, the commissioners were authorized tp hear evidence as to the time of the actual evacuation of the territory, by Spanish tmops, ancLto decide upon the fact The law gave them “power to hear and decide all matters respecting such claims, and to determine thereon, according to justice and to,’equityand declares their determination shall be final.
 

 , We ate bound to presume that every fact necessary to warrant the certificate, in the terms of it, was proved before the commissioners; and that,.consequently,it was shown to them; ■ and the final evacuation of the territory by the Spanish troops took place 'on the 30th of March, 1798.
 

 Upon the whole, >it is the unanimous opinion of this Court, that the Supreme Court of the . state of Mississippi h.as not misconstrued the Aet of Congress, from,which the rights of the parties are derived; .and. that the judgment of the Supreme Court be affirmed.
 

 ■ This cause came on, &c., on consideration whereof,'*It is the opinion of this Court that the Supreme Court of the state of Mississippi-has not misconstrued the Act of Congress on which the plaintiff below relies ; and it is therefore adjudged and ordered by this Court, that the judgment of said Supreme Court of the state of .Mississippi be, and the same is, hereby, -affirmed, with costs.