Caldwell, I.
This is a bill, filed by a purchaser, at a tax sale of lands, to compel the assignee of the former owner to convey to him the legal title.
The bill states, in substance, that the land in controversy, six hundred and forty acres, was entered by David Boss, June 22, 1810, and surveyed April 26, 1816. That the land was regularly sold for taxes, in December, 1829, to Lyne Starling, for S201; that the auditor made him a deed in July, 1831, and that Starling, in 1832, conveyed to the complainant. That about January 20,1838, no patent having been previously issued, the defendant, as assignee of David Boss, obtained a patent for the land, and brought an action of ejectment against complainant, and obtained a judgment, which was affirmed in the court in bank, December term, 1844, and that defendant was about to take out a writ of possession.
The bill prays fora perpetual injunction against the proceedings on the judgment in ejectment, and that defendant be compelled to convey all his title to complainant.
The answer admits most of the facts stated in the bill, except *those that relate to the regularity of the proceeding, relating to the delinquency and sale of the land for taxes, which are specifically denied. This controversy was first brought before this court, in an action of ejectment, reported in 13 Ohio, 74.
*475 The court in that case held, that the legal title of the patentee, Niswanger, was not affected by the sale for taxes, made before the patent issued, and that Niswanger, having obtained the patent for the land, was entitled to recover in ejectment, notwithstanding the tax title. The court also decided, that if the tax sale was regular, Gwynne’s remedy was by bill in equity.
The complainant afterward filed this bill, to which the defendant demurred, and'the cause was heard and decided on demurrer, and is reported in 15 Ohio, 367. The question then presented on demurrer was the same that is here presented : whether a court of chancery has jurisdiction in such a case. The court there decided that Niswanger, by virtue of his patent, held the naked legal title; but that he held it in trust for Gwynne, who, by the tax sale, had. acquired an equitable title, and overruled the demurrer.
The defendant then filed his answer, and the case as now presented was heard by this court, and is reported in 18 Ohio, 400. The court then held, in conformity with the decision in 15 Ohio, that Gwynne had obtained merely an equitable title to the land by the tax sale; that the sale was regular, and that he was entitled to a conveyance, from Niswanger, of the legal title. A now hearing was afterward granted, and the cause now again comes up for decision. Two questions are presented for the consideration of the court:
1. Is a purchaser at a tax sale (under the law in force at the time these proceedings were had) entitled to the aid of a court of chancery, as against the former owner, to enable him to perfect his title ?
2. If a court of chancery has jurisdiction in such a case, ^have the proceedings and sale in this ease been regular and legal, so as to entitle the purchaser to the relief sought ?
The statute of 1827, the one in force when this sale was made, provides that the auditor “ shall execute and deliver to such purchaser or qrarchasers, his or their heirs, or assignee or assignees, a deed therefor, in due form of law ; which deed shall convey to the purchaser or purchasers, his heir or their heirs, or assignee or assignees, a good and valid title to the land so sold; and such deed shall be received, in all courts in this state, as good evidence of title to the-purchaser or purchasers, his or their heirs, etc. Nor shall the title conveyed by said deed to the purchaser or purchasers, his or their heirs, assignee or assignees, be invalidated or affected by any error *476 .previously made in listing, taxing, selling, or conveying said lands.” 3 Chase’s Stat. 1562. Now, it can not be contended that a deed ■made under this law, will not convey a complete legal title, if the state had the power to make such title. The deed, it is provided, shall bo one conveying, in terms, the property absolutely, without reservation or condition, in a form that, if made between individuals, and attended with the usual covenants, would hold the grantor liable for a complete title against all claims, either legal or equitable. It is also declared, that it shall convey a good and valid title to the land. And tho legislature, as if to remove every possible cavil, .•gives it the still further explicit sanction, that it shall be received, in all courts, as good evidence of title. It would be vain to say that such a title was not complete, both in law and equity, if the party making it had the power to pass such a title. The power of tho state has been exerted, to its utmost capacity, to make a perfect title.
It is contended, on tho part of complainant, that the patent, not having issued to Ross at the time of the tax sale, the sale merely conveyed an equity; that the legal title being in the United States, ■the state could not interfere with, or change its course, by any appropriation or conveyance of land. This proposition is founded on the supposition, that the sovereignty *of the United States, in controlling the title to the land, still exists, and that it would, be an attack on that sovereignty, for the state to meddle with the legal title. It is true, if the United States has any interest in the land, has not parted with all control over it as owner; if the general government holds any title, either legal or equitable, for its own benefit, either of a pecuniary or strictly governmental character, the state could not appropriate it, or change the legal title; such attempted appropriation would bo an attack on the sovereignty of the general government. But what is the character of the right which the United States holds in such a case ? The pai'ty, by his entry, location of his warrant, and survey, has made, as it were, complete and perfect payment for his land; he has acquired a perfect right to the title from the government; he has the faith of the government of the United States pledged to complete his legal title; he is treated by the government as the rightful owner of the property. The United States holds the mere naked legal title, which of right belongs to him, and which will be delivered to him, .and which, when delivered, will relate back to the time of the *477 entry and survey. The state has the guaranty of the "United States, that he is the rightful owner of the land, and so far from its being an attempted infringement on the sovereignty of the gen. eral government, it is only carrying out its intentions, for the state to treat the person thus holding it, as the real owner thereof. Now, if it could be held that the general government, by thus holding the title, had such a right that the state was precluded from disposing of the legal title, for taxes, as against the owner, the same theory would prohibit the state from taxing the land. The states have no more power to tax the lands of the United States, than they have to make a title for them; the one would be an equal attack on the rights of the general government with the other. "We think the proposition proves too much for the complainant’s cause ; it would prove the tax unwarranted, and all the proceedings under it void. It is to be observed that this is not a controversy where any right is or can be set *up, on the part of general government; it is solely between individuals. The state would have a clear right to make, as between individuals, the equitable title of Ross a legal one, and treat it as such. This principle is clearly recognized in the case of Ross v. Borland et ah, 1 Peters, 664. That was an action of ejectment, and the state court of Mississippi had held that a junior patent, issued on a prior certificate, should prevail over a senior patent.
The Supreme Court of the United States, in that case, say: “ For the plaintiff in error, it is argued, that the state court erred in deciding that the elder grant should not prevail in the action of ejectment. It is undoubtedly true, that upon common-law principles, the legal title should prevail in the action of ejectment, upon the same grounds that the legal right prevails in other actions, in courts of law. It is so hold in those states in which the principles of the common law are carried into full effect, and the course of proceedings in the action of ejectment is according to those j)rineiples. In the states where these principles prevail, it is held, that in a trial at law, the courts will not look behind or beyond a grant, to the rights upon which it is founded, nor examine the progressive stages of the title, antecedent to the grant. But, in other states, the courts of law proceed on other principles. In the action of ejectment, they look beyond the grant, and examine the progressive stages of the title from its inception, whether by warrant, survey, entry or certificate, until its final consummation *478 by grant; and if found regular and according to law in these progressive stages, the grant is held to relate back to the inception of the right, and have dignity accordingly. This latter course seems to bo the one adopted and pursued by the courts of Mississippi. It is enough for us to say, that in doing so, and in applying their peculiar mode of proceeding to titles derived through and under the laws of the United States, they violated no provisions of any statute of the United States.”
Vo think, then, that the State of Ohio had the power to determine that Ross, who had a complete equitable right to the Uand, should be treated as the owner, and that the land should bo subjected to taxation ; that the state could sell this land for taxes, and provide that the purchaser, as against Ross, or those claiming under him, should take a good and valid title, both in law and equity; and this the state has done. And the purchaser at the sale, if the proceedings be substantially correct, has a complete legal title, and does not require the aid of a court of chancery. We are of opinion that much of the difficulty in this case arises from attempting to make a tax title analogous to an ordinary chain of title. A tax title, from its very nature, has nothing to do with the previous chain of title; does not in any way connect itself with it. It is a breaking up of all previous titles. The party holding such title, in proving it, goes no further than his tax deed ; the former title can be of no service to him, nor can it prejudice him.
It was well said by counsel in argument on this point, that a tax sale operated on the property, not the title. In an ordinary case, it matters not how many different interests may be connected with the title, what may be the particular interest of the party in whose name the property may be listed, for taxation ; it may bo a more equitable right; if the land be regularly sold for taxes, the property, accompanied with a legal title, goes to the purchaser, no matter how many estates, legal or equitablo, may be connected with it.
And in case the person in whoso name it was listed, who had but an equitable title to the land at the time of the tax sale, gets a conveyance from the person holding the legal title, he can not avail himself of it. The land is gone, and another title has intervened. Just so with a person holding under a purchase from the government; until the patent issues, he can hold nothing but 'an equitable right, because he can not trace his title to any origi *479 ®al source; but if the land be sold for taxes whilst his right is a mere equitable one, he can not reclaim it, although he afterward obtain a patent from the United States.
A majority of the court think the title created by a tax sale is *a legal title, and when not good at law, that a court of chaneery has no power to aid the purchaser in completing his title.
The bill will therefore be dismissed.