60 U.S. 334 (____)
19 How. 334
WILLIAM F. BRYAN AND RUDOLPHUS ROUSE, PLAINTIFFS IN ERROR,
v.
ROBERT FORSYTH.
Supreme Court of United States.

It was argued by Mr. Ballance and Mr. Johnson for the plaintiffs in error, and submitted on a printed argument by Mr. Williams for the defendant.
Mr. Justice CATRON delivered the opinion of the court.
Forsyth sued Bryan and Rouse in ejectment for part of lot No. 7, in the town of Peoria, in the State of Illinois. The action was founded on a patent to Forsyth, from the United States, dated the 16th day of December, 1845, which patent was given in evidence on the trial in the Circuit Court. It was admitted that the defendants were in possession when they were sued, and that they held possession within the bounds of the patent. To overcome this prima facie title, the defendants gave in evidence a patent from the United States to John L. Bogardus, containing twenty-three acres, dated January 5th, 1838, which included lot No. 7. To overreach this elder patent, the plaintiff relied on an act of Congress, passed May 15, *335 1820, for the relief of the inhabitants of the village of Peoria, providing that every person who claims a lot in said village shall, on or before the first day of October next, deliver to the register of the land office for the district of Edwardsville a notice in writing of his or her claim; and it was made the duty of the register to make a report to the Secretary of the Treasury of all claims filed, with the substance of the evidence in support thereof, and also his opinion, and such remarks respecting the claims as he might think proper to make; which report, together with a list of the claims which, in the opinion of the register, ought to be confirmed, shall be laid by the Secretary before Congress, for their determination.
The report was made, and laid before Congress, in January, 1821. As respected lot No. 7, (a part of which is in dispute,) the register reported that Thomas Forsyth claimed it; that it was three hundred feet square, French measure, situate in the village of Peoria, and bounded eastwardly by a street; separating it from the Illinois river; northwardly by a cross street, westwardly by a back street, and southwardly by a lot claimed by Jacques Mette. The remark of the register is: "A part of this lot must have been embraced by the lot claimed by Augustine Rogue." Rogue's claim (No. 2) was for a lot of about an arpent, and bounded, says the register, northwardly by a lot occupied by Maillette, eastwardly by a road separating it from Illinois river, and southwardly and westwardly by the prairie.
The register reported on seventy lots in all. A survey to designate boundaries among the claimants was indispensable, as they were in considerable confusion. Congress again legislated on the subject, by act of March 3, 1823, and provided that each of the settlers, whose names were contained in the report, who had settled a village lot prior to the first of January, 1813, should be entitled thereto; the lot so settled on and improved, not to exceed two acres; and where it exceeded two acres, such claimant should be confirmed in a quantity not exceeding ten acres. It was made the duty of the surveyor of public lands for the district, to cause a survey to be made of the several lots, and to designate on a plat thereof the lot confirmed and set apart to each claimant, and forward the same to the Secretary of the Treasury, who shall (says the act) cause patents to be issued in favor of each claimant, as in other cases.
The survey was made in 1840, by order of the surveyor general of Illinois and Missouri, which was duly returned, approved, and recorded. We are of opinion that the act of 1823 conferred on the grantee an incipient title, and reserved to the *336 executive department administering the public lands the authority to settle the boundaries by actual survey among the claimants; and until this was done, the courts of justice could not interfere and establish boundaries. It was competent for Congress to provide, that before a title should be given to a confirmee, the exact limits of his confirmation should be ascertained by a survey executed by authority of the United States. (West v. Cochran, 17 How., 415.)
When the surveys were made, and the plats returned and approved, and recorded by the surveyor general of Illinois and Missouri, and recognized as valid at the General Land Office, (as the patent to Forsyth shows it was,) it bound the parties to it, the confirmee and the United States; nor can either side be heard to deny, that the land granted by the act of 1823 is the precise lot Forsyth was entitled to; such being the settled doctrine of this court. (Menard's Heirs v. Massey, 8 How., 313.) Neither can Bogardus or his assignee deny that he was concluded by the survey. His patent grants the land to him in fee, "subject, however, to all the rights of any and all persons claiming under the act of Congress of 3d March, 1823, entitled `An act to confirm certain claims to lots in the village of Peoria, in the State of Illinois.'" This patent is the only title set up by the defendants below; by its terms, all power to perfect the title of Forsyth, according to the act of 1823, was reserved to and retained by the department of public lands, as effectually after the Bogardus patent was issued as before.
The survey having bound the United States, and concluded Bogardus, Forsyth had a title by virtue of the acts of 1820 and 1823, and the survey, which was of a legal character; and he could maintain an action of ejectment on it, even had no patent issued. This is true beyond controversy, if the action had been prosecuted in a State court, where the State laws authorized suits in ejectment on imperfect titles. (Ross v. Borland, 1 Pet., 655; Chouteau v. Eckhard, 2 How., 372.)
But it is insisted that in the courts of the United States a different rule applies, and that, as a patent carries the fee, it is the better title. The case of Robinson v. Campbell (3 Wheat., 212) is supposed to be to this effect. There, the conflicting patents were made by the Commonwealth of Virginia, and the defendant attempted to prove that a settlement had been made on the land in dispute by one Fitzgerald, and which preference right had been assigned to Martin, who obtained a certificate from the commissioners for adjusting titles to unpatented lands; which certificate was of anterior date to the junior patent, and was the source of title. It was nothing more than evidence that Martin had a preference to purchase the land, if *337 he saw proper to do so; and was not competent evidence in an action of ejectment, according to the laws of Virginia, or even of Tennessee. It was not an entry founded on consideration, but a right of abating an equity at the discretion of the settler. Neither in Virginia nor Kentucky (where the Virginia land laws prevail) is the defendant allowed to go behind the patent in a court of law, in order to give the patent a date from that of the entry on which the patent was founded.
The question here is, on the effects of acts of Congress confirming claims to lands as valid, by which legislation the Government is concluded; and as respects these, it is settled, that after a survey is duly made, approved, and recorded at the surveyor general's office, an action of ejectment may be maintained on such titles in the courts of the United States. It is a good prima facie title. (Stoddard v. Chambers, 2 How., 313; Le Bois v. Bramell, 4 How., 456; Bissell v. Penrose, 8 How., 317.) In Stoddard v. Chambers, this court held "that a confirmation by act of Congress vests in the confirmee the right of the United States, and a patent, if issued, could only be evidence of this." Other cases followed this decision. By the third section of the act of July 4, 1836, it is provided that a patent shall issue to the confirmee in cases confirmed by that act. In this respect, the provisions of the acts of 1823 and 1836 are alike.
Of course the patent in this instance can relate to a title which is valid against another title unaided by the younger patent.
This disposes of the exception taken by the defendants below to the ruling of the court, that Forsyth's title was superior to that of Bogardus.
They next ask the court to instruct the jury, that by the laws of Illinois they had such title as would bar an action of ejectment after seven years, accompanied by actual residence on the land sued for; and if the jury believe from the evidence that the defendants have so long had said possession, the plaintiff cannot succeed in this suit. There were two other instructions asked, requiring the court to instruct the jury that the plaintiff's action was barred by the act of limitations of twenty years.
The court refused to instruct as requested; "but, on the contrary, instructed the jury that the patent to Bogardus did not grant or convey the ground in controversy; and it being conceded that it was the only title the defendant had, there is no such title as under the statute of limitations protects the possession of the defendants." This instruction was founded on an exception in the patent to Bogardus. It grants to him, *338 and to his heirs and assigns, forever, "subject, however, to all the rights of any and all persons under the act of Congress of March 3d, 1823, entitled `An act to confirm certain claims to lots in the village of Peoria, in the State of Illinois.'"
When this patent was made, in 1838, the village lots had not been surveyed, and those that interfered with the land granted to Bogardus might never be claimed. Subject to this contingency he took his patent, and had a title in fee till 1840, when the village title of Forsyth was ripened into the better right. After that, those claiming under Bogardus held the position of one who claims protection by the act of limitations under a younger patent against an elder one. He has only the appearance of title. The patent to Bogardus was a fee-simple title on its face, and is such title as will afford protection to those claiming under it, either directly, or, having a title connected with it, with possession for seven years, as required by the statute of Illinois. The court below erred in cutting off this defence.
In the progress of the trial in the Circuit Court, the plaintiff offered in evidence the printed report of Edward Coles, the register of the land office at Edwardsville, as found in the American State Papers, vol. 3, from pages 421 to 431, inclusive, to which the defendant objected, because it was not, without proof of its authenticity, legal evidence. But the court overruled the objection, and the report was given in evidence to the jury, to which ruling the defendants excepted.
These State Papers were published by order of Congress, and selected and edited by the Secretary of the Senate and Clerk of the House. They contain copies of legislative and executive documents, and are as valid evidence as the originals are from which they were copied; and it cannot be denied that a record of the report of Edward Coles, as found in the printed journals of Congress, could be read on mere inspection as evidence that it was the report sent in by the Secretary of the Treasury. The competency of these documents as evidence in the investigation of claims to lands in the courts of justice has not been controverted for twenty years, and is not open to controversy.
It is ordered that the judgment be reversed, and the cause remanded for another trial.
Mr. Justice McLEAN dissenting.
Sometime during the late war with England, a company of militia in the service of the United States, at Peoria, in Illinois, taking offence at the inhabitants of the village, burnt it.
Congress, with the view of ascertaining the extent of the injury and the names of the sufferers, on the 15th May, 1820, *339 passed an act, "that every person, or the legal representatives of every person, who claims a lot or lots in the village of Peoria, in the State of Illinois, shall, on or before the first day of October next, deliver to the register of the land office for the district of Edwardsville a notice in writing of his or her claim; and it shall be the duty of the said register to make to the Secretary of the Treasury a report of all claims filed with the said register, with the substance of the evidence thereof; and also his opinion, and such remarks respecting the claims as he may think proper to make; which report, together with a list of the claims which in the opinion of the said register ought to be confirmed, shall be laid by the Secretary of the Treasury before Congress, for their determination."
The report was made, as required in the above act, by E. Coles, Esq., register, on the 10th of November, 1820. By that report, No. 7, Thomas Forsyth claims "a lot of three hundred feet in front by three hundred feet in depth, French measure, in the village of Peoria, and bounded eastwardly by a street separating it from the Illinois river, northwardly by a cross street, westwardly by a back street, and southwardly by a lot claimed by Jacques Mette."
On the 3d of March, 1823, Congress passed an act, which declares, "that there is hereby granted to each of the French and Canadian inhabitants, and other settlers, in the village of Peoria, in the State of Illinois, whose claims are contained in a report made by the register of the land office at Edwardsville, in pursuance of the act of Congress approved May the 15th, 1820, and who had settled a lot in the village aforesaid prior to the 1st day of January, 1813, and who had not heretofore received a confirmation of claims or donation of any tract of land or village lot from the United States, the lot so settled on and improved, where the same shall not exceed two acres."
The second section made it the duty of the surveyor of the public lands of the United States, for that district, to cause a survey to be made of the several lots, and to designate on a plat thereof the lot confirmed and set apart to each claimant, and forward the same to the Secretary of the Treasury, who shall cause patents to be issued in favor of such claimants, as in other cases.
In the action of ejectment brought by Forsyth, as above stated, to recover possession of lot No. 7, described, it was agreed that upon the trial it shall be admitted that the plaintiff has the title of Thomas Forsyth in and to the land sued for, by descent, and purchase, and conveyance; and also that the defendants have had the actual possession of the land for which they are respectively sued, by residence thereon, for ten *340 years next preceding the commencement of the suit; and that John L. Bogardus, under whom they claim, had possession of the southeast fractional quarter of section nine, in township eight north, of range eight east, upon which the land sued for is situated, claiming the same under pre-emption right more than twenty years before the commencement of these suits, but he never had the actual possession of that part of said fractional quarter section sued for; and that said "defendants respectively had vested in them, before the commencement of this suit, all the right of Bogardus."
A patent was issued to Bogardus for the southern fractional quarter of section nine, in township eight north, of range east, containing twenty-three acres and ninety-three hundredths of an acre, &c.; "subject, however, to all the rights of any and all persons claiming under the act of Congress of 3d March, 1823, entitled `An act to confirm certain claims to lots in the village of Peoria, in the State of Illinois.'"
The defendants rely on the statute of limitations of 1827, which requires that the possession should be by actual residence on the land, under a connected title in law or equity, deducible of record from the United States.
The court instructed the jury that the title claimed under Bogardus did not protect them under the statute.
This is held by this court to be an error, for which the judgment is reversed.
The error of the court consists in giving a construction not only to a written instrument, but to a patent. That it is the province of the court to construe such a paper, will not be controverted. The patent conveyed to Bogardus the land described, "subject, however, to all the rights of any and all persons claiming under the act of Congress of the 3d March, 1823, entitled `An act to confirm certain claims to lots in the village of Peoria, in the State of Illinois.'"
The lot in controversy was claimed under the act of 1823, which declared, "that there is hereby granted to each of the French and Canadian inhabitants, and other settlers, in the village of Peoria, in the State of Illinois, whose claims are contained in a report made by the register of the land office at Edwardsville, in pursuance of the act of Congress approved May 15th, 1820, and who had settled a lot in the village aforesaid prior to the 1st of January, 1813, and who have not heretofore received a confirmation of claims or donation of any tract of land or village lot of the United States, the lot so settled upon and improved, where the same shall not exceed two acres," &c.
The right made subject to the patent was a legal right; it *341 was a grant by Congress, which this court has recognised as the highest grade of title. A patent is issued by a ministerial officer, who is subject to error, but the legislative action is not to be doubted.
The survey of the lot was not made until 1st September, 1840, and the patent was issued to Forsyth, December 16, 1845.
In the case of Ballance v. Forsyth, (13 Howard, 24,) this court say: "If the patent to Bogardus be of prior date, the reservation in the patent, and also in his entry, was sufficient notice that the title to those lots did not pass; and this exception is sufficiently shown by the acts of the Government." And again: "The statute did not protect the possession of the defendant below. His patent excepted those lots; of course, he had no title under it for the lots excepted."
Until the case before us was reversed for error by the district judges who conformed to the above decision, I did not suppose that any one could doubt the correctness of the decision. Bogardus, in 1838, took a grant from the United States, subject to Forsyth's right, thereby recognising it, and consequently from that time he held it in subordination to Forsyth's title. If it be admitted that the fee did not pass to Forsyth until the patent issued in 1845, the patent had relation back to the act of 1823, and operated from that time. The report of the register defined the boundaries of the lot as specifically as the survey, by reason of which, the lot was as well known, it is presumed, to the public, before the survey as afterwards. This may not have been the case with all the lots.
Let any one read the patent to Bogardus, and ask himself the question, whether the United States intended to convey the lots to which the patent was made subject, and the answer must be, that they did not. By the act of 1823, they granted those lots to the French settlers, who, by the report of the register, were entitled to them under the act of 1820. It would have been an act of bad faith in the Government, after the act of 1823, to convey any one of those lots; and, on reading the patent, it is clear they did not intend to convey any one of them. It is said, suppose the French settlers had not claimed the lots, would not Bogardus have had a right to them? Such a supposition cannot be raised against the facts proved. The title of Forsyth was of prior date, and of a higher nature, than that of Bogardus. His title was subordinate, as expressed upon its face.
In the case of Hawkins v. Barney's Lessee, (9 Curtis, 428,) the same question was before this court. Barney conveyed fifty thousand acres of land, in Kentucky, to Oliver; sometime afterwards, Oliver reconveyed the same tract to Barney, in *342 which deed were recited several conveyances of parcels of the tract to several individuals, and particularly one of 11,000 acres, to one Berriman. Barney brought an ejectment against Hawkins, and proved that he had entered on the fifty thousand acre tract. This court held his action could not be sustained, unless he proved the defendant was not only in possession of the large tract, but he must show that the possession was not upon any one of the tracts sold and conveyed.
To apply the principle to the case before us. Had Bogardus brought an action of ejectment to sustain it, he must have proved the trespasser was within his patent, and outside of any one of the reserved lots. The words, "subject to all the rights of any persons under the act of 1823," showed that those rights were not granted by the patent; and if Bogardus himself could not have recovered, it is strange how the defendants could recover, who claim to be in possession under his patent.
The agreed case admits that the "defendants respectively had vested in them, before the commencement of this suit, all the right of Bogardus." But whether this possession under the right of Bogardus was for a day or a year, is nowhere shown by the evidence; and unless I am mistaken, the statute requires a seven years' possession under title to protect the trespasser, and in effect give him the land.
Bogardus was in possession, claiming a pre-emption, but I do not understand, from the opinion of the court, that such a possession will run, even against the French claimants. Bogardus himself was a trespasser on the lands of the United States, and until he received his patent in 1838, I suppose he could not set up a claim to the land under title.
I hold, and can maintain, that the instruction of the district judge was right, in saying that the patent of Bogardus did not grant or convey the ground in controversy. And if it did, there was no such possession under it, which, by the statute of limitations, protected the right of the defendants.