Mr. Justice CATRON
 

 delivered the opinion of the court.
 

 Silas Eosgit obtained a warrant for three hundred and twenty acres 'of land as a. Canadian volunteer in the war of 1812 with Great Britain. This warrant he caused tó be.- located in the Indiana -Territory, June 3, 1816, on the land in dispute. On the twenty-eighth day of that month he conveyed the land to "William.H. Spencer, who died in possession of the same; it descended to his children and heirs, who continued in possession, and are sued in. this action by one of the two heirs of Eosgit, who died about 1823. A patent was issued by the United States -to Eosgit, dated in October, 1816. The deed from Eosgit to Spencer was offered in evidence in the Circuit Court, on behalf of the defendants, and was objected to:
 

 1st. Because it is void on its face, being in violation of the acts of Congress touching the subject .of bounty land for military services, and against the policy of the United States on that subject.
 

 2d. Because said writing, on a fair legal'construction of its terms, conveys no legal title (and indeed no title at all, of any kind) to the lands in question; and
 

 3d. Because said writing is irrelevant, and incompetent as evidence in this cause.
 

 The court overruled the objections, and permitted the defendants to give the writing in evidence, and instructed the jury that it was a complete defence to the action; to all of which the plaintiff excepted.
 

 1. Was the writing void because it was in violation of acts of Congress touching the sale of bounty lands before the patent had issued? This depends on a due construction of the act of 18Í6. It gave to each colonel nine hundred and sixty acres; to each major eight hundred acres; to each capfain six hundred and forty acres; to each subaltern officer four hundred acres;
 
 *237
 
 to each non-commissioned officer, musician, and private, thi’ee hundred and twenty acres; and to the medical and other staff in proportion to their pay, compared with that of commissioned officers. Warrants were ordered to be issued by the Secretary at War, subject to be located by the owner, in quarter sections, on lands within the Indiana Territory, surveyed by the United States at the time of the location. And three ■ months additional pay was awarded-to this description of troops.
 

 By the acts of 1811, ch. 10,1812, ch. 14, sec. 12, and that of May 6, 1812, ch; 77,- see. 2, it was provided that each' private and non-commissioned officer, who enlisted in the regular service for five years, and was honorably discharged, and obtained a certificate from his commanding officer óf his faithful service, should be entitled to a bounty of one hundred and sixty acres of land; and that the heirs of those who died in service should be entitled to the same, to each of whom by name a warrant was to issue. The act of May 6,1812, provided for surveying, designating, and granting these bounty lands; the fourth sec- ' tion of which declares that no claim for military land bounties shall be assignable or transferable until after the patent* has been, granted; and that all sales, mortgages, or contracts, made prior-to the issuing of the patent, shall be void; nor shall the lands be subject to execution sale till after the patent issues.
 

 It is insisted that this provision accompanies and is part of the act of .1816, and several opinions of Mr. Attorney General Wirt are relied on to sustain the position that the acts granting bounty lands are
 
 in pari materia,
 
 and must be construed alike. He gave an opinion in 1819, (2 L. L., -and Opinion 6,) that a land warrant issued to a Canadian volunteer was not - assignable on its face, or in its .nature, and consequently that the patent must issue in the name of the soldier. But he did not decide, nor was he called on to do so, that, after the warrant had been located and merged in the entry, that the equitable title and right of possession to the land could not be transferred by contract.
 

 The act .of 1816 involves considerations, different froifi the previous provisions, for the protection of the enlisted common soldier. . A' class -of active, efficient, American citizens, who
 
 *238
 
 had emigrated to Canada, were compelled to leave there on the war of 1812 breaking out; they returned to their own country, and went into its service; and when the war was ended, both officers and soldiers were compensated in lands, and money for this extraordinary service. The act of Congress orders the warrants to be delivered to the respectivo . owners, to be located by them; whereas the common soldier, provided for in the acts of 1811 and 1812, did not receiv.e his warrant, but the Government bound.itself to locate the land at its own expense. Congress may have thought it not at all necessary to guard the Canadian volunteers against being overreached by speculators, abd deprived of their bounty lands. - This, however, is mere conjecture. The act of March 5, 1816, has no reference to, or necessary connection with, any other bounty-land act; it is plain on its face, and single in its purpose. And, then, what-is the rule? One that cannot be departed from without assuming on part of the judicial tribunals legislative power. It is, that where the Legislature.makes a plain provision, without making any exception, the courts can make none. McIver
 
 v.
 
 Reagain, 2 Wheaton, 25; Patton
 
 v.
 
 McClure, Martin and Yerger’s Ten. R., 345, and cases cited; Cocke & Jack v. McGinnis, ib., 365; Smith
 
 v.
 
 Troup, 20 Johns., 33. We are therefore of the opinion thatEosgit could sell and convey the land to Spencer after the entry was made.
 

 2. The next ground of objection to the deed is, that it conveys no title when fairly construed. It has a double' aspect, obviously, for the reason that the parties to it did not know, at the time it was executed, whether or not the'land had been located by Eosgit’s agent. The issuing of the warrant is recited in.the deed, and the-quantity of land it calls for; and then the grantor says: “ Eor the consideration of five hundred dollars, I have assigned and set over, and by these presents do grant, bargain, sell, transfer, assign, and set over, to said William H. Spencer, his heirs and assigns, forever, the said three hundred and twenty acres of land; to have and to hold the same in as full and ample a manner as I, the said Silas Eosgit, my heirs or assigns, might or could enjoy the same, by virtue of the said land warrant or otherwise.”
 

 
 *239
 
 Then follows an irrevocable power from Fosgit to Spencer, his heirs or assigns, to locate the warrant, obtain a patent, &c.
 

 The warrant having been located on land already surveyed, it could easily be identified. The description is to the same effect as if the deed had said, I convey the land covered by my warrant of three hundred and twenty acres. ,
 

 We aré therefore of -the opinion that the deed was a valid' conveyance of Fosgit’s interest in the land sued for at the time • the deed was executed.
 

 The third exception to the deed is covered by the foregoing answers.
 

 3. The charge of the court to the jury held, as a matter of law, that the deed was a complete defence to the action, and that the patent issued to Fosgit.
 
 related
 
 back to the location of the warrant, and constituted part of Spencer’s title.
 

 This consideration involves a question of great practical importance to States and-Territories where entries exist on which patents have not issued, as sales of such titles are usual and numerous. The incipient state of such titles has not presented any material inconvenience, as it is usually provided by State laws that suits in ejectment may be prosecuted or defended by virtue of the title.
 

 In Indiana, it is provided by statute that “ every certificate, of purchase at a land office of the United States shall be evidence of legal title to the land therein described.” That is to say, for the purposes of alienation and transfer, and for the ' purposes of litigating rights of property and possession, a certificate of purchase shall be treated as a legal title; and to this effect it is competent evidence-in an action of ejectment. Smith
 
 v.
 
 Mosier, 5 Black. R., 51.
 

 After the patent issued, this title was exclusively subject to State regulations, in -so far as remedies were provided for its enforcement or protection; and therefore no objection can be made to any State law that does not impugn the title acquired from the United States.
 

 Whether the patent related back in support of Spencer’s deed is'not a new question in this court. It arose in the case of Landes
 
 v.
 
 Brant, (10. How., 372,) where it was held that a
 
 *240
 
 patent issued in 1845 “ to Claymorgan and his heirs,” by which the heirs took the legal title, related back and inured to the protection of a title founded on a sheriff’s sale of Claymorgan’s equitable interest, made in 1808. There, as here, the contest was between the grantee’s heirs and the purchaser of the incipient title. The court holding, that when the patent issued, it related to the inception of title, and must be taken, as between the parties to the suit, to bear date with the commencement of title.
 

 It is also the settled doctrine of this court, that an entry in a United States land office on which a patent issues, (no matter how long after the entry is made,) shall relate to the entry, and take date with it. (Ross
 
 v.
 
 Barland, 1 Peters, 655.) The
 
 fiction
 
 of relation is, that an intermediate
 
 bona fide
 
 alienee of the incipient interest may claim that the patent inures to his benefit by an
 
 ex post facto
 
 operation, and receive the. same protection at law that a court of equity could afford him.
 

 4. We hold that, on another ground, the instruction was clearly proper.
 

 Here, the after-acquired naked fee is set up to defeat Eosgit’s' deed, made forty years ago in good faith, for a full consideration, and to oust the possession of Spencer’s heirs, holding under that deed. The rule has always been,-that where there was a warranty or covenants for title, that, would cause circuity of action if the-vendee' was evicted by the vendor, then the deed worked an estoppel. But thé rule has been carried further, and is now established, that where the grantor sets forth, on. the face of his conveyance, by averment or recital, that he is seized of a particular estate in the premises, and which estate the déed purports to convey, the grantor, and all persons in privity with him shall be estopped from ever after-' wards denying that he was seized and possessed at the time he made the conveyance.' The estoppel works upon the
 
 estate,
 
 and binds an after-acquired title, as between parties and privies. Van Rensselaer
 
 v.
 
 Kearney, 11 How., 325; Landes
 
 v.
 
 Brant, 10 How., 374.
 

 ■It follows that the .heir of Eosgit is estopped by her father’s deed from disturbing the. title or possession .of Spencer’s; heirs.;
 

 
 *241
 
 It is ordered that the judgment of the Circuit Court be affirmed.