Boynton, J.
This is a petition in error to reverse the-judgment of the District Court of Ottawa county, affirming a judgment of the court of common pleas, and to-reverse the judgment of the latter court. The only assignments of error, which it is necessary to notice, are, that the coui’t of common pleas erred in overruling the motion for a new trial, and that the district court consequently erred in refusing to reverse the judgment. The first question arising, involves the right of the plaintiff tor recover on the proof offered by him, in the event that it! turns out that the defendant’s alleged tax title is void, and that he acquired no title by adverse possession.
The plaintiff having succeeded to the title of Mrs. Farrell, and a legal estate being essential to the maintainence of the action, the question at once presents itself, whether *231 tbe patent to Porter so far inured to tbe benefit of Mrs. Earrell as to vest in her a legal estate. Had the deed to Arnet been with warranty of title, there is no doubt, that on the receipt by Porter of the patent from the government, an estoppel would have arisen in favor of Mrs. Earrell. Nor is there any doubt that a party is estopped from denying the operation of a deed according to its intent,, where, either by recital, admission, covenant, or otherwise,, it appears that a certain estate was intended to be conveyed.. Rawle on Covenants for Title, 338; Shepard’s Touchstone,. 82.
In Goodtitle v. Baily, Cowper, 597, it was said by Lord Mansfield, that “ the rules laid down in respect of the construction of deeds are founded in law, reason, and common sense. That they shall operate, according to the intention of the parties, if by law they may; and if they can not operate in one form, they shall operate in that, which by law will effectuate the intention.” Where the seizin of an estate is affirmed in the deed, either in express terms, or by necessary implication, the grantor and those in privity with him, whatever be the form of the conveyance, will ever afterward be estopped from denying that he was so seized at the time he made the conveyance. Van Rensselaer v. Kearney, 11 How. 325.
If an estoppel arise in such case, where the grantor assumed to be seized of the estate, a fortiori, should one arise, where he in fact owned the whole equitable interest at the time of the conveyance, with the right to the legal title. There is no doubt from the evidence in the present case, that Porter intended to convey and Arnet to receive the whole interest in the property which constituted the subject-matter of the conveyance.
The deeds referred to the certificates as containing evidence of Porter’s ownership, and in terms conveyed to Arnet “ all the estate, right, title, interest, possession, claim, and demand,-whatsoever,” belonging to Porter. He thus conveyed to Arnet the right to the legal title as fully *232 as he possessed it himself. There was and could be no outstanding title adverse to the one conveyed to Arnet, and when the naked legal title remaining in the government, was conveyed to Porter, who had thus parted with his right to receive it, it at once inured to the benefit of Mrs. Farrell, who then owned the equitable estate.
In Lessee of French v. Spencer, 21 How. 228, it was held by the Supreme Court of the United States, that “ a patent issued to the original beneficiary, who had previously sold his right, inured to the benefit of the purchaser, and related back to the date of the entry; and the heir of the grantor, in such a deed, is estopped from setting up a legal title under the patent.” The contest, in that case, was between the heirs of the patentee, and the purchaser from him of the incipient title. And it was held to be the settled doctrine of the court, that a patent, issuing on an entry in a United States land office, no matter how long after the entry is made, shall relate to the entry, and take date from it. The doctrine of relation was declared to be, that an intermediate bona fide alienee of the incipient interest may claim that the patent inures to his benefit by an ex ¡post facto operation, and receive the same protection at law that a court of equity could afford him. See also Ross v. Barland, 1 Peters, 655 ; Landes v. Brant, 10 How. 372; Wirth v. Branson, 98 U. S. 118.
It is thus made very clear that no one standing in the shoes of the patentee, can successfully resist the right of his alienee to possession, although the latter’s interest was acquired before the issuing of the patent. It is equally clear that one in possession, who founds his right to remain, not on any title of his own, but on the mere denial that a former owner has parted with his right or title, is concluded by the same estoppel that concludes the former owner. The law attaches the same disability to all who maintain that such title is still outstanding, and attempt to found rights upon it. And such estoppel may be used,, not merely defensively, but to sustain actions for the recovery of possession. Lessee of Kinsman v. Loomis, 11 Ohio, *233 478. It follows, therefore, that the plaintiff was entitled to recover on the proof made, unless the defendant established a paramount right or title in himself. This he sought to do, by proof of title acquired under a sale of the land for taxes, and by adverse possession for the period of twenty-one years. As respects the title alleged to have been acquired under the sale for delinquent taxes, there are two objections, either of which is fatal to its validity. The statute then in force (1 Curwen, 630), and under which the proceedings were had, required the county auditor to publish the delinquent list, with notice of sale, at least four w'eeks, between the first day of October and the first day of December. The only proof given at the trial tending to show compliance with this requirement, was the record of the certificate of the auditor that the list was published for four consecutive weeks prior to December first. This evidence was not admissible. From aught appearing, the publication may have been in September. The law required it to be between October first and December first. In Lessee of Kellogg v. McLaughlin, 8 Ohio, 114, the record of the certificate of the auditor, that the list was published for four consecutive weeks, between the first Monday in October and the first Monday of December, was held inadmissible, as the last publication may have been made after December first.
Again, the statute, § 31, required the auditor, on or before the day of sale mentioned in the notice thereof, to insert at the foot of the record, on said delinquent list, a copy of such notice, and to certify on said record, immediately following such notice, the name of the paper, and the length of' time such list and notice were published therein.
In Lessee of Winder v. Starling, 7 Ohio, 544, it was said not to be essential to the validity of the sale, that this certificate should appear at the foot of the record. But that it must somewhere appear on the record, is a plain and indispensable requirement. There was no evidence offered at the trial showing a certificate on the record that the *234 oiotice of sucb sale had. been published at all. The certificate declared that the foregoing list was published for four consecutive weeks. The object of the statute, in requiring this certificate to be made on the record, was to secure, in permanent form, evidence of the name of the paper, and the length of time such list and notice were published, in order that it could be readily ascertained whether or not the sale made was in conformity to law.
The record failing to disclose the existence of this certificate, and consequently the proof in the mode required by law of the time the list and notice of sale were published, the sale was invalid, and the alleged title acquired thereunder void.
¥e are next brought to consider the validity of the title acquired under the sale of the eighty-acre tract, as lands forfeited to the State. That the auditor’s deed is prima facie evidence of title, and may be given without any proof of the regularity of the proceedings resulting in the sale of the land, was held in Turner v. Yeoman, 14 Ohio, 208, and in Woodward v. Sloan, 27 Ohio St. 592.
The only effect of this rule is to shift the burden of proof, by imposing on the party asserting the invalidity of the deed, the duty of showing it to be void for want of compliance with the statute in the proceedings leading to the alleged forfeiture. This we think he has shown. Unless the lands were legally forfeited to the State, their sale, as forfeited lands, was illegal. That they were not so forfeited, and hence not subject to sale, is very manifest. The record fails to show, that, at the sale of delinquent lands on the second Monday of January, 1847, the lands in controversy, or any other lands, were offered for sale and not sold for want of bidders. Section forty-seven of the act under which these proceedings were had, provided, that every tract of land and town lot offered for sale by the treasurer, as hereinbefore provided, and not sold for want of bidders, shall be, and the same is hereby declared forfeited to the State.” Section thirty-four required the *235 county auditor or his deputy to attend all sales of delinquent lands made by the treasurer of his county, and to-mate a record thereof in a “ substantial book,” therein describing the several tracts of land and town lots offered for sale, stating how much of each tract or lot was sold, and to whom sold; and if any tract or lot should remain unsold for want of bidders, to enter such fact - on the record. Such record is the only proof of the fact required to be recorded. Parol evidence is not admissible to establish it. Lessee of Kellogg v. McLaughlin, 8 Ohio, 116; Lessee of Ward v. Barrows, 2 Ohio St. 246. Here, then was wanting an indispensable condition to the forfeiture, and hence, any sale made of the land under the supposition or belief that a legal forfeiture had taken place, was without authority of law, and the sale consequently void.
The remaining question involves the constitutionality of that clause of the act of May 7, 1869 (66 Ohio L. 338), which makes certain facts enumerated in said act conclusive proof of possession in the purchaser at the tax sale, and those claiming under him. And we are of the opinion that in so far as it undertakes to establish possession in the purchaser at such sale, or those claiming under him, before its enactment, it is in conflict with the constitution. It not only violates section 19 of the bill of rights, which declares that private property shall ever be held inviolate, but also-that clause of section 28, article 2, which withholds from the legislature power to pass retroactive laws. It will be observed that at the time the act was passed, more than twenty-one years had elapsed since the date of either the delinquent or forfeited sale, and the transfer of the land on the duplicate to the name of the defendant. Hence, the-statute, the moment it took effect, cut off all right of action by a purchaser having knowledge of the facts. Its plain effect, therefore, if carried into operation according to its terms, is to deprive the owner of the privilege of selling the land to any one cognizant of such tax sale, and of the rights that are claimed thereunder, notwithstanding the sale as to such owner was absolutely void. It is true, that *236 the act does not purport to affect the right of the owner to the full enjoyment of the property. He may enjoy its use as fully as if such sale had never been made; but the moment he parts with it, to one who examines the title, and who by such examination becomes acquainted with the facts which the statute makes the legal equivalent of adverse possession in the purchaser at the tax sale, the title at once inures to the benefit of the one holding under such sale, in case the necessary time has elapsed for such adverse possession to ripen into title. And this is made to result notwithstanding neither any, nor all of the facts combined, which are thus made conclusive proof of possession as against a purchaser of the land, have the least tendency to establish possession as against the original owner. That the act, with such effect and operation, impairs the value of the property to a very material extent is perfectly obvious. It substantially destroys the jus disponendi. Very few persons will venture to invest their money in real estate without becoming acquainted with the condition of the title, and finding a tax deed on record, the inquiry to which that circumstance naturally gives rise, can not fail to discover the facts to which the statute gives a conclusive effect in favor of the person claiming under such deed, as against one buying with knowledge of such facts. It follows that, in most cases, brought within the operation of the statute, there would be an almost total restriction on the right of alienation. If the owner conveys with covenant to warrant and defend the title, and the tax title claimant recovers the property from the grantee, the grantor becomes at once liable on his covenants; and the result is, he is required to refund the purchase-money to the grantee — the land in the meantime having irrecoverably gone to one, who, as against the grantor, had not the slightest color of title. A statute which, in its operation, works such results, and upon rights of property vested and fixed at the date of its passage, is not only retroactive within the constitutional meaning of that term, but is a direct infringement upon the inviolability of private prop *237 erty. In effect, it seizes the property of one person, and transfers it to another, without even the semblance of consideration.
But it was said in argument, that the law is curative in its nature, and, therefore, aúthorized hy the latter clause of section 28, article '2 of the constitution. The act, however, does not purport, nor was it designed, to be a curative one. Neither in terms nor by implication does it undertake to supply defects or cure irregularities in the proceedings preliminary to the tax sale. If it did, its invalidity would be quite as apparent. The legislature has no power to divest the title of the owner of property, and transfer it to another, by declaring a void tax sale to be valid. It may authorize the court to carry into effect upon such terms as maybe just and equitable, the manifest intention of parties and officers, by curing omissions, defects, and errors in instruments and proceedings arising out of their want of conformity with the laws of this state. Art. 2, § 28. This it did not undertake to do. The act was not passed either in the exercise, or the attempted exercise, of this power. It does not undertake to confer on the courts any power whatever to correct irregularities. That the effect of mere-irregularities in the proceedings preliminary to a tax sale, which might have been dispensed with by the legislature, may be obviated by appropriate subsequent legislation, is-not intended to be doubted. But it was not within the scope or object of the statute to secure any such result; there is nothing in its language or subject-matter indicating such an intention upon the part of the legislature. Nor was it either in its nature or object a statute regulating conveyances. The owner is left perfectly free to convey, and the title, upon conveyance, goes to the grantee as against the grantor as fully and completely as if the statute did not exist. Its object, as stated in its title, is to improve the law of evidence concerning the titles of real estate. Its object, in fact, was to create a title by possession in those claiming under a tax sale as against a certain class of purchasers; and this is sought to be accomplished by *238 making the existence of certain facts conclusive proof of adverse possession. Considered as an act prescribing a rule of evidence, its validity depends upon its effect upon rights existing when put into operation.
A statute changing the rules of evidence is usually classed with those affecting the remedy, and unless it impairs the obligation of a contract, or destroys vested rights, Is not repugnant to the constitution. But where vested rights are divested or destroyed, although the statute professes or purports to affect remedies only, it is unconstitutional. Von Hoffman v. City of Quincy, 4 Wall. 535 ; Green v. Barry, 15 Wall. 622; Rich v. Flanders, 39 N. H. 304. In Cooley’s Const. Lim. *367, the author, commenting on the power of the legislature to alter or change 'the rules of evidence, and to make them, in their altered form, applicable to existing causes of action, whether in suit or not, .says:
“ But there are fixed bounds to the power of the legislature over this subject which can not he exceeded. As to what shall be evidence, and which party shall assume the burden of proof in civil cases, its authority is practically unrestricted, so long as its regulations are impartial ,aud uniform ; but it has no power to establish rules which, under pretense of regulating the presentation of evidence, go so far as altogether to preclude a party from exhibiting his right. Except in those eases, which fall within the familiar doctrine of estoppel at the common law, or other cases resting upon the like reasons, it would not, we apprehend, be in the power of the legislature to declare that a particular item of evidence should preclude a party from establishing his rights in opposition to it. . . A statute, therefore, which should make a tax deed conclusive evidence of a complete title, aud preclude the owner of the original title from showing its invalidity, would be void, because being not a law regulating evidence, but an unconstitutional confiscation of property.”
In the following cases it was held not competent for the legislature to make a tax deed conclusive evidence of *239 the legality of all prior proceedings, so far as respects the essential pre-requisites for the exercise of the taxing power: McCready v. Sexton, 29 Iowa, 357; Abbott v. Lindenbower, 42 Mo. 162; White v. Flynn, 32 Ind. 46. See also Cooley on Taxation, 223; Blackwell on Tax Titles, *80.
In East Kingston v. Towne, 48 N. H. 57, it was said to be “ a maxim of general jurisprudence, not confined to any code, but recognized as fundamental in the law of every enlightened people,that no man’s private rights shall be concluded by any judgment, decree, or other adjudication, to which he was not so far a party that he had an opportunity to be heard, and to adduce evidence upon all points that affected his interest.”
In so far as the act under consideration operates to set the statute of limitations in motion in respect to tax sales occurring before its passage, and makes the knowledge of the existence of the facts therein enumerated conclusive proof of possession in fact, we hold it to be in conflict with the constitution. As a rule of evidence operating to conclude the party from showing rights existing when it went into operation, it can not, as wo have seen, have any effect. It can not operate as a statute of limitations, as respects sales occurring before its passagé, because not sufficiently definite and uniform. It fixes no time after its passage within which the action may be brought. One who purchased the land five years before the expiration of twenty-one years from the date of the tax sale, would have five years, under the operation of the statute, within which to commence his action, while one who purchased one day before, would be required to bring his action within twenty-four hours. A statute of limitations, to be operative, must afford the party on whose rights of action it operates, a reasonable time within which to commence his action, and such time must be definite and uniform.
Judgment reversed, and cause remanded for a new trial.