## LYNCH ET AL. *v.* BERNAL ET AL.

1. The Board of Commissioners created under the act of Congress, entitled "An act to ascertain and settle private land claims in the State of California," passed March 3d, 1851, had jurisdiction of a claim made under a grant of a lot by a Mexican governor within the limits of the pueblo of San Francisco; and such claim was not required to be presented in the name of the corporate authorities of the city.

2. The eighth section of that act requires every person claiming lands in California by virtue of any right or title derived from the Spanish or Mexican government, to present his claims to the Board of Commissioners for examination. The fourteenth section qualifies this general language, and declares that the provisions of the act shall not extend to lots held under grants from any corporation or town to which lands have been granted for the establishment of a town by the Spanish or Mexican government; nor "to any city, or town, or village lot, which city, town, or village existed on the 7th of July, 1846;" and provides that the claims for such lots shall be presented by the corporate authorities of the town; or if the land, upon which the town, city, or village is situated, was originally granted to an individual, shall be presented in the name of such individual: *Held*, 1st, that the second clause of this section does not apply to *all lots situated within the limits* of a city, town, or village, which existed on the 7th of July, 1846, but only to the lots owned or claimed by such city, town, or village; 2d, that the object of the section was to give to lotholders deriving title from a common source—from the authorities of a pueblo or town, or from an individual who was originally the grantee of the land upon which the pueblo or town is situated—the benefit of the examination by the board of the general title under which they hold, and relieve the commissioners from the necessity of considering a multitude of separate claims for

---

small tracts depending upon the validity of the same original title. It intended that the corporate authorities should present under one general claim not only the interest of the city, town, or village which they represent, but also the separate interests of individuals holding under conveyances from them.

3. The fourteenth section of the act has no application to lots held adversely to the corporation or town by independent titles. The confirmation of a claim, whether made to corporations or individuals, cannot enure to the benefit of parties holding adversely to them.

4. When the Board of Commissioners had jurisdiction of a claim, its validity and title to recognition and confirmation were subjects for that tribunal's determination; and its adjudication, however erroneous, cannot be collaterally assailed on the ground that it was made upon insufficient evidence.

5. The rule is as applicable to inferior and special tribunals as it is to those of superior or general authority, that where they have once acquired jurisdiction their subsequent proceedings cannot be collaterally questioned for mere error or irregularity; and the provision of the fifteenth section of the act of March 3d, 1851, declaring that the final decrees of the commissioners, or of the District Court, and patents following them, in California land cases, shall be conclusive between the United States and the claimants only, and shall not affect the interests of third persons, does not change the operation of this general rule.

6. The decree of the District Court upon the claim involved an adjudication that the grant under which it was made was valid; and the decree approving the survey settled the location and boundaries of the land. Neither of these determinations can be collaterally assailed for any matter which might have been corrected on appeal, had it been brought to the attention of the appellate court.

7. Whoever received deeds from the city of San Francisco, or asserted title to parcels of land under the Van Ness ordinance, whilst the claim of the city to the land was pending for confirmation before the tribunals of the United States, necessarily held whatever they took subject to the final determination of the claim. Their title stood or fell with the claim.

8. The exception made in the final decree of confirmation to the city of San Francisco from the tract confirmed of "such parcels of land as have been, by grants from lawful authority, vested in private proprietorship, and have been finally confirmed to parties claiming under said grants by the tribunals of the United States, or shall hereafter be finally confirmed to parties claiming thereunder by said tribunals in proceedings pending therein for that purpose," is not limited to parcels of land claimed under perfect grants, but includes all parcels claimed by private parties under grants from the authorities of the former government, the claims to which had been subjected, or might, in proceedings then pending, be subjected to the examination of the tribunals of the United States, and had been or might be, confirmed by them.

*4.* The doctrine of relation is applied only to subserve the ends of justice, and to protect parties deriving their interests from the claimant pending the proceedings for the confirmation of his title. It gives effect to the confirmation of the title as of the day when the proceedings to secure such confirmation were instituted; and for that purpose only can the decree be treated as made at that time. No different interpretation is to be given to the language of the decree than would be given if the doctrine of relation had no application.

ERROR to the Supreme Court of the State of California.

The case was ejectment to recover the possession of certain real property situated within the corporate limits of the city of San Francisco, as defined by its charter of 1851, the plaintiffs asserting title to the premises under a grant of the Mexican government confirmed by the tribunals of the United States. The case was commenced in a District Court of the State, and was tried by the court without the intervention of a jury by stipulation of the parties.

The court found as facts, that the plaintiffs (who are the widow and son of José Cornelio Bernal, deceased), in March, 1853, presented a petition to the Board of Land Commissioners, created under the act of March 3d, 1851, to ascertain and settle private land claims in California,* for the confirmation of a claim asserted by them to the premises in controversy; in which petition they averred that the premises were granted in 1834 by Figueroa, then Mexican governor of the Department of California, to said José Cornelio Bernal; and that such proceedings were had that in 1854 the said claim was adjudged valid and confirmed by the board; and in 1856, on appeal, by the District Court of the United States. The court set forth in its findings the proceedings had before the board, and the District Court on appeal; and what it declared to be the evidence remaining of record with the clerk of the District Court with respect to the grant. That evidence stated that a grant was made by Governor Figueroa to Bernal, as alleged above, but the court found that according to that evidence no such grant was ever issued, differing in its finding in that respect from both

---

* 9 Stat. at Large, 631.

the Board of Land Commissioners and the District Court of the United States.

From the decree confirming the claim of the District Court, the United States declined to prosecute an appeal to this court, and the decree thus became final.

In 1861 the tract confirmed was surveyed under the directions of the Surveyor-General of the United States, and the survey was subjected to the revision and correction of the District Court, under the act of Congress of June 14th, 1860.* When made to conform to the directions of the court, the survey and the plat of it were approved, and its decree of approval was, on appeal, affirmed by this court.† The approved survey and plat embraced the premises in controversy.

The defendants were in possession of the premises at the commencement of the action; and asserted that they possessed an older and superior title to the premises under the ordinance of the city of San Francisco, adopted in June, 1855, and the subsequent legislation of the State and of the United States respecting the same. Their claim arose in this wise. At the cession of California to the United States, and for many years previous thereto, San Francisco was a Mexican pueblo, asserting a claim to lands embracing its site and adjoining lands to the extent of four square leagues. The city of San Francisco, as successor of the Mexican pueblo, claimed these municipal lands, and presented her claim to the Board of Land Commissioners for confirmation. In December, 1854, the board confirmed the claim to a portion of the land, embracing the premises in controversy. The case was then appealed by the city to the District Court of the United States, and was afterwards transferred to the Circuit Court of the United States, under the act of Congress of July 1st, 1864.‡ In May, 1865, the Circuit Court confirmed the claim to four square leagues, subject to the following deductions, namely: "Such parcels of land as have been heretofore reserved or dedicated to public uses by the

---

* 12 Stat. at Large, 33.          † Dehon v. Bernal, 5 Wallace, 774.
‡ 13 Stat. at Large, 333.

United States; *and also such parcels of land as have been by grants from lawful authority vested in private proprietorship, and have been finally confirmed to parties claiming under said grants by the tribunals of the United States, or shall hereafter be finally confirmed to parties claiming thereunder by said tribunals in proceedings pending therein for that purpose, all of which said excepted parcels of land are included within the area of four square leagues, above mentioned (those described as confirmed), but are excluded from the confirmation to the city.*"\* The claim thus confirmed by the decree of the Circuit Court, was also confirmed, with some modifications, by the act of Congress of March 8th, 1866.†

Whilst this claim was pending before the District Court on appeal from the board for confirmation, viz., on the 20th of June, 1855, the common council of the city of San Francisco passed " an ordinance for the settlement and quieting of the land titles in the city of San Francisco," which is known in that city as the " Van Ness ordinance," after the name of its supposed author.  By its second section the city relinquished and granted all the title and claim which she held to the lands within her corporate limits, as defined by the charter of 1851, with certain exceptions, to the parties in the actual possession thereof, by themselves or tenants, on or before the 1st of January, 1855, provided said possession was continued up to the time of the introduction of the ordinance into the common council, or if interrupted by an intruder or trespasser, had been or might be recovered by legal proceedings.‡

In March, 1858, the legislature of the State ratified and confirmed the ordinance, and in July, 1864, Congress passed an act by which all the right and title of the United States to the lands were granted to the city of San Francisco, for the uses specified in the ordinance.§   The party through whom the defendants claim was in the actual possession of the premises in controversy at the time designated in the ordi-

---

\* 3 Wallace, 686.      † 14 Stat. at Large, 4.      ‡ 15 California, 627.

§ 13 Stat. at Large, 333.   Act to expedite the settlement of titles to lands in the State of California, § 5.

nance, and also on the passage of the confirmatory act of the legislature, and therefore acquired whatever right or title the city then possessed.

The District Court found as conclusions of law that the defendants were estopped by the final decree of confirmation, and the approved survey, from questioning the plaintiffs' title to the premises, and gave judgment for the plaintiffs for the possession of the premises and $500 damages for their use and occupation. On appeal the judgment was affirmed by the Supreme Court of the State; and the case was brought here under the 25th section of the Judiciary Act.

*Messrs. Ashton and G. H. Williams, for the plaintiffs in error; Mr. E. L. Goold, contra.*

Mr. Justice FIELD delivered the opinion of the court.

The act of June 14th, 1860, gives to a survey and plat of land claimed under a confirmed Mexican grant, when approved by the District Court, the effect and validity of a patent of the United States. It so declares in express terms.* It is therefore upon the decree of confirmation, and the approved survey and plat, that the Bernals rely to recover in the present action.

To meet the case thus presented the defendants contend, 1st. That the Board of Land Commissioners had no jurisdiction to consider the claim of the plaintiffs under the grant of Figueroa, and as a consequence, that the action of the District Court, in hearing the appeal from the board, and in revising and approving the survey of the claim, was without authority and void; and 2d. That if the board had such jurisdiction, the defendants possess an older and superior title to the premises under the ordinance of the city of San Francisco, adopted in June, 1855, and the subsequent legislation of the State and of the United States respecting the same.

The objection to the jurisdiction of the board arises from

---

* 12 Stat. at Large, 34, § 5.

the fact that the premises granted consist of a lot within the limits of the pueblo or town of San Francisco as it existed at the cession of California to the United States. At that date San Francisco, as such pueblo, possessed an equitable claim to lands within the limits of four square leagues, to be assigned and measured off from the northern portion of the peninsula upon which the town is situated. The city of San Francisco succeeded to such interest, and her authorities presented the claim to the Board of Land Commissioners for confirmation; and the defendants insist that the claim of the Bernals under the grant of Figueroa should have been presented in the name of those authorities, and could in no other way have been brought under the jurisdiction of the board.

This position is founded upon the language of the 14th section of the act of Congress, but is not, in our opinion, supported by its meaning. A previous section of the act requires every person claiming lands in California by virtue of any right or title derived from the Spanish or Mexican government, to present his claim to the commissioners for examination. The 14th section qualifies this general language, and declares that the provisions of the act shall not extend to lots held under grants from any corporation or town, to which lands have been granted for the establishment of a town by the Spanish or Mexican government; nor " to any city or town, or village lot, which city, town, or village existed on the 7th of July, 1846;" and provides that the claims for such lots shall be presented by the corporate authorities of the town, or if the land upon which the town, city, or village is situated, was originally granted to an individual, shall be presented in the name of such individual.

The second clause of this section does not apply to all lots situated within the limits of a city, town, or village, which existed on the 7th of July, 1846, but only to the lots owned or claimed by such city, town, or village.

The object of the section was to give to lotholders deriving title from a common source—from the authorities of a pueblo or town, or from an individual who was originally the grantee of the land upon which the pueblo or town is

situated—the benefit of the examination by the board of the general title under which they hold, and relieve the commissioners from the necessity of considering a multitude of separate claims for small tracts depending upon the validity of the same original title. It intended that the corporate authorities should present under one general claim not only the interest of the city, town, or village which they represent, but also the separate interests of individuals holding under conveyances from them. The confirmation of the common title to these authorities would of course enure to the benefit of parties holding under them.

The section has no application to lots held adversely to the corporation or town by independent titles. The confirmation of a claim, whether made to corporations or individuals, could not enure to the benefit of parties holding adversely to them.

The claim of the Bernals, not being derived from the pueblo of San Francisco, or by any action of its authorities, but directly by grant from the political chief of the department, was adverse to the claim of the city. It was, therefore, properly presented to the Board of Commissioners for examination, and jurisdiction over it was rightfully taken by that tribunal.

The board having jurisdiction of the claim, its validity and title to recognition and confirmation were subjects for that tribunal's determination; and its adjudication, however erroneous, cannot be collaterally assailed on the ground that it was made upon insufficient evidence. The rule is as applicable to inferior and special tribunals as it is to those of superior or general authority, that where they have once acquired jurisdiction their subsequent proceedings cannot be collaterally questioned for mere error or irregularity. The provision of the fifteenth section of the act of March 3d, 1851, declaring that the final decrees of the commissioners, or of the District Court, and patents following them, in these California land cases, shall be conclusive between the United States and the claimants only, and shall not affect the interests of third persons, does not change the operation

of this general rule. Final decrees in other judicial pro-ceedings affecting the title to property, are not conclusive except between the parties; they bind only them and their privies; they do not conclude the rights of third persons not before the court, or in any manner affect their rights. Third parties, with respect to the adjudications of the Board of Commissioners, and of the District Court, on appeal from the board, stand upon the same footing as they do with re-spect to other adjudications in the ordinary proceedings of courts of law.

The decree of the District Court upon the claim neces-sarily involved an adjudication that the grant under which it was made was valid; and the decree approving the survey settled the location and boundaries of the land. As neither of these determinations can be collaterally assailed for any matter which might have been corrected on appeal, had it been brought to the attention of the appellate court, the plaintiffs must recover unless the defendants have a superior title to the premises.

Such title they claim to possess, as we have already men-tioned, under the ordinance of the city of San Francisco, passed in June, 1855, and the subsequent legislation of the State and of the United States.

Whilst the claim of the city of San Francisco to her mu-nicipal lands was pending before the District Court of the United States, on appeal from the Board of Commissioners, the ordinance of June 20th, 1855, commonly known, from the name of its reputed author, as the Van Ness ordinance, was passed. By its second section the city relinquished and granted all the title and claim which she held to the lands within her corporate limits, as defined by the charter of 1851, with certain exceptions, to the parties in the actual possession thereof, by themselves or tenants, on or before the 1st of January, 1855, provided such possession was con-tinued up to the time of the introduction of the ordinance into the common council, or if interrupted by an intruder or trespasser, had been or might be recovered by legal pro ceedings.

In March, 1858, the legislature of the State ratified and confirmed the ordinance; and in July, 1864, Congress passed an act by which all the right and title of the United States to the lands were granted to the city of San Francisco, for the uses specified in the ordinance.\* The party through whom the defendants claim was in the actual possession of the premises in controversy at the time designated in the ordinance, and also on the passage of the confirmatory act of the legislature, and therefore acquired whatever right or title the city then possessed.

The claim of the city was confirmed in May, 1865, by the decree of the Circuit Court of the United States, to which court the hearing of the claim had been transferred; and subsequently, with some modifications, by the act of Con· gress of March 8th, 1866.†

The position of the defendants is that by the possession of the party through whom they claim, and the operation of the Van Ness ordinance, they acquired an older and superior title to that ceded to Bernal by the grant of Figueroa. This position assumes that the city possessed a title to the premises in controversy at the time the ordinance was passed, whereas, though the city was then asserting, in the courts of the United States, her claim to four square leagues, the boundaries of the tract were not defined, nor was it known what exceptions and reservations might be made from the claim when it should be considered and finally determined. Whoever received deeds from the city, or asserted title to parcels of land under the Van Ness ordinance, whilst the claim of the city to the land was, thus pending, necessarily held whatever they took subject to the final determination of the claim. Their title stood or fell with the claim.

Now, when the final decree upon the claim was made there were excepted from the tract confirmed such parcels of land as had been, by grants from lawful authority, vested in pri-

---

\* 15 California, 627; Act to expedite the settlement of titles to lands in the State of California, § 5; 13 Stat. at Large, 333.

† 14 Stat. at Large, 4; 13 Id. 333, § 4; Grisar *v.* McDowell, 6 Wallace, 377

vate proprietorship, and had been finally confirmed to parties claiming u. .ler said grants by the tribunals of the United States, or should thereafter be finally confirmed to parties claiming thereunder by said tribunals in proceedings then pending therein for that purpose. This exception is not limited to parcels of land claimed under perfect grants, as contended by counsel, but includes all parcels claimed by private parties under grants from the authorities of the former government, the claims to which had been subjected, or might, in proceedings then pending, be subjected to the examination of the tribunals of the United States, and had been, or might be, confirmed by them. The object of the exception was to prevent any possible controversy between parties claiming under the city, and parties holding under grants adjudged valid by the tribunals of the United States, and to protect the latter from being harassed by further litigation respecting their titles. By the language, " such parcels of land as have been by lawful authority vested in private proprietorship," no more is meant than parcels of land which have been granted by lawful authority to private parties.

The exception excludes, therefore, from confirmation to the city the land granted to Bernal, and the Van Ness ordinance did not operate to pass any right or interest in the demanded premises to the party through whom the defendants claim.

As, by the doctrine of relation, the decree confirming the title of the city took effect as of the day when her petition was presented to the board in July, 1852, it is contended that the exception is to be construed as referring only to grants, which had been confirmed previous to that date, or which might subsequently be confirmed in proceedings then pending. But the position is not tenable. Such a construction is not required from any application of the doctrine of relation. That doctrine is applied only to subserve the ends of justice, and to protect parties deriving their interests from the claimant pending the proceedings for the confirmation of his title. It gives effect to the confirmation of the title

as of the day when the proceedings to secure such confirmation were instituted; and for that purpose only can the decree be treated as made at that time. No different interpretation is to be given to the language of the decree than would be given if the doctrine of relation had no application.*

JUDGMENT AFFIRMED

---

* Jackson *v.* Bard, 4 Johnson, 230; Heath *v.* Ross, 12 Ib 140.