## UNITED STATES *v.* ANDERSON.

### APPEAL FROM THE COURT OF CLAIMS.

No. 560. Submitted March 21, 1904.—Decided May 16, 1904.

By the fiction of relation, where the interest of justice demands it, the legal title may be held to relate back to the initiatory step for the acquisition of the land.

Where the selection of indemnity lands is made in accordance with the statute and the selection rejected, and action on the appeal is delayed, but the appeal is finally decided in favor of the selections, the case is one peculiarly within the principle of relation, as the approval of the selection manifestly imports that at the time of the selection the land was rightfully claimed by the applicant.

The successor in interest to the applicant who would have been entitled to recover against trespassers for materials removed from the land after the application and before the patent issued, may, under the doctrine of relation, be regarded as the owner from the date of the application, and is entitled to receive from the United States the amount collected by it from trespassers who removed materials from the land after such date, the United States having had notice of the claim prior to such collection.

THE United States appeals from a judgment condemning it to pay fifteen thousand dollars. The essential facts stated in the findings are as follows:

In 1856 Congress granted to the State of Alabama public lands to aid in the construction of various railroads referred to in the first and sixth sections of the act. Among these was the Northeast and Southwestern Railroad, "from near Gadsden to some point on the Alabama and Mississippi state line, in the direction to the Mobile and Ohio Railroad, and with a view to connect with said Mobile and Ohio Railroad." The grant of land in place was six odd-numbered sections per mile and lying within six sections in width on each side of the railroad. The act in section 1 also contained a provision for indemnity lands, as follows:

"But in case it shall appear that the United States have,

when the lines or routes of said roads are definitely fixed, sold any sections or. any parts thereof, granted as aforesaid, or that the right of preëmption has attached to the same, then it shall be lawful for any agent or agents, to be appointed by the governor of said State, to select, subject to the approval of the Secretary of the Interior, from the lands of the United States nearest to the tiers of sections above specified, so much land, in alternate sections, or parts of sections, as shall be equal to such lands as the United States have sold, or otherwise appropriated, or to which the rights of preëmption have attached as aforesaid, which lands (thus selected in lieu of those sold and to which preëmption rights have attached as aforesaid, together with the sections and parts of sections designated by odd numbers, as aforesaid, and appropriated as aforesaid) shall be held by the State of Alabama, for the use and purpose aforesaid: *Provided,* That the land to be so located shall in no case be further than fifteen miles from the lines of said roads, and selected for and on account of each of said roads.".

The act, in section 6, moreover contained this proviso:

"That the lands hereby granted to said State for the purpose of constructing a railroad from the northeast to the southwestern portion of said State, lying northwest of Elyton, shall be assigned to such road as may be designated by the legislature of said State."

It was further in substance provided, in section 4, that if any of the authorized roads were not completed within ten years, all right of the State in and to the lands granted should cease, and they should revert to the United States. 11 Stat. c. 41, pp. 17, 18.

By joint resolution of the legislature of the State of Alabama, approved January 30, 1858, the grant made by the act aforesaid was accepted, and land was granted by the State to the Northeast and Southwestern Alabama Railroad, a body corporate, existing under the laws of Alabama, to be used and applied by said company "upon the terms and conditions in said act of Congress contained." Laws of Alabama, 1857 to

1858, p. 430. In June, 1856, an order of withdrawal was made by the Land Department of all the lands which were thought to be embraced within both the place and indemnity limits, which withdrawal included the land to which this controversy relates. This order was modified a few days thereafter so as to allow settlements to be made on the lands prior to the time of the definite location of the road. Such definite location was made and accepted by the Commissioner of the General Land Office with the approval of the Secretary of the Interior, in December, 1858.

The Northeast and Southwestern Railroad was reincorporated by the State of Alabama in October, 1868, under the name of the Alabama and Chattanooga Railroad Company. Acts of Alabama, 1868, pp. 207, 345. In April, 1869, the time for the completion of the road was extended by act of Congress for a period of three years from that date. 16 Stat. 45. The road was completed within the extended time, in conformity with the law of Alabama and in compliance with the act of Congress.

In December, 1887, an agent, duly appointed by the Governor of Alabama for that purpose, selected certain lands in the indemnity limits in lieu of lands within the place limits, which had been lost to the grantee by sale or preëmption. At the time of making the selections there were tendered to the proper land officers all legal fees and charges. The selections were rejected by the local officers and an appeal was taken to the Commissioner of the General Land Office. This appeal, however, was not acted upon for a considerable period of time; but finally in April, 1896, the appeal was decided in favor of the selections, which were approved, and the title consequently passed from the United States to the State of Alabama in trust for its grantees under the act of Congress. At the time of the definite location of the road there was a deficiency in the place limits of 519,000 acres, and the whole amount of the vacant or odd-numbered sections within the indemnity limits, both approved and unapproved, available

to meet this deficiency, was less than 238,000 acres, leaving, therefore, on the face of the land office records, at the time of the definite location of the road, a deficiency of more than 281,000 acres. By various acts of the legislature of the State of Alabama and conveyances which are recited in the findings, and which it is not necessary to reproduce, the plaintiffs below became the owners of the land patented by the United States, within the indemnity limits, as above stated. During the period, however, which intervened between the selections of land made by the agent of the State of Alabama and the approval of the selections by the Secretary of the Interior, certain persons went upon the lands selected and removed therefrom valuable iron ore and lime rock. After the approval of the selections the United States brought a suit to recover from the persons who had thus trespassed upon the lands the value of the product by them removed. The owners of the land, in pursuance of the selections, asserted a claim to the benefit of the recovery which might be made, but assented to a compromise made by the United States with the trespassers by which fifteen thousand dollars was paid to the United States as the value of the material taken from the land. The owners of the land at the time of the compromise protested that they alone were entitled to receive the sum paid to the United States and reserved their right to recover the same from the United States.

It is stated in the findings that a road known as the South and North Alabama Railroad, declared to be one of the roads enumerated in the sixth section of the act of Congress making the grant to the State of Alabama, was definitely located opposite the land in controversy on May 30, 1866, nearly eight years after the definite location of the Northeast and Southwestern Railroad, and was constructed within the time required by law. There is no finding, however, that a grant was ever made to the South and North Alabama Railroad by the State of Alabama, or that that road preferred any claim to the land in question.

*Mr. Assistant Attorney General Pradt* for appellant.

*Mr. M. D. Brainerd* and *Mr. J. A. W. Smith* for appellees.

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

As there is no finding which tends even to establish any right at any time to the land in question in favor of the South and North Alabama Railroad, all consideration of that subject may be put out of view. Moreover, the existence of any supposed right in favor of that company is conclusively disposed of on this record by the finding as to the prior selection by the State of Alabama under the grant in aid of the Northeast and Southwestern Railroad and the approval of such selection by the Secretary of the Interior.

The Government makes no contention that if the title of the plaintiffs was of such a character as to entitle them generally to recover against the trespassers that the cause of action against the United States for the money collected by it from the trespassers is not one which is judicially cognizable. The sole contention of the Government is that the plaintiffs, after application for selections and before approval of the selections, had no such title to the land as would have justified a recovery from the trespassers, and, *a fortiori*, therefore had no such title as would warrant their recovering from the United States the sum of money which it collected from the trespassers for the elements removed from the land during the period between the date of the application for selections and the approval of the same by the Secretary of the Interior. This contention is based upon the proposition that, whilst under the act in question the grant of land within the place limits may have been one *in præsenti*, the right to the indemnity lands did not vest in the grantee until approval of the selections by the proper officers of the Government; and hence the legal title was in the United States as to such lands pending action on the applica-

tion for selections, and therefore at the time of the trespass the United States was alone authorized to recover for the depredations committed. Unquestionably the general doctrine is that where approval by the officers of the Government of selections of indemnity land has been made a condition precedent to the right to take such lands, the legal title remains in the United States until divested by the approval of the selections. *Oregon & California Ry. Co. v. United States, No. 1,* 189 U. S. 103. In consonance with this doctrine it has also been decided that, until approval of selections within the indemnity limits, land embraced in applications for selections remains the property of the United States to such an extent that it cannot be taxed as the property of the applicants. *Wisconsin Railroad Co. v. Price County,* 133 U. S. 496.

But even though it be conceded, *arguendo,* that the doctrine in question would allow rights to be acquired by third parties to the injury of the applicant after the making of the selections and pending approval thereof by the Government, it does not follow that it controls the controversy here presented. This results because on this record the rights of third parties are not involved, since the controversy concerns only the right of the United States to retain as against its grantees the proceeds recovered by it as the result of a trespass upon land after an application for the selection of such land and pending action thereon by the proper officers of the Government. Under these circumstances the case is one for the application of the fiction of relation, by which, in the interest of justice, a legal title is held to relate back to the initiatory step for the acquisition of the land. Many cases illustrating the doctrine in various aspects have been determined in this court.[1]

Indeed, this case is one coming peculiarly within the principle of relation, as the approval of the selections manifestly

---

[1] *Gibson* v. *Chouteau,* 13 Wall. 92, 100; *Ross* v. *Barland,* 1 Pet. 655; *Landes* v. *Brant,* 10 How. 348; *Lessee of French* v. *Spencer,* 21 How. 228, 240; *Beard* v. *Federy,* 3 Wall. 478; *Grisar* v. *McDowell,* 6 Wall. 363; *Stark* v. *Starrs,* 6 Wall. 402; *Lynch* v. *Bernal,* 9 Wall. 315; *Shepley* v. *Cowan,* 91 U. S. 330.

imported that at the time of the application for selections the land in question was rightfully claimed by the applicant. And cogently does this become the case when it is considered that the findings establish that at the time the application for selection was made, on the face of the records of the land office, there was an enormous deficiency both in the place and indemnity lands. *Shepley* v. *Cowan*, 91 U. S. 330, 337.

Nor is the assertion well founded that this case is not a proper one for the application of the doctrine of relation because coming within the rule announced in *United States* v. *Loughrey*, 172 U. S. 206. At the time of the trespass complained of in that case the United States had taken no step to assert its reversionary rights in and to the land trespassed upon, the legal title to which was in the State of Michigan at the time the trespass was committed. Here as we have seen the grantee had exercised his right to apply for selections within the indemnity limits and had in legal form requested the approval of the same by the Government. Everything therefore which the grantee was required by law to do to obtain the legal title had been performed. These facts bring this case within the principle decided in *Heath* v. *Ross*, 12 Johns. 140, and *Musser* v. *McRae*, 44 Minnesota, 343, referred to in the opinion of the court in the *Loughrey* case, (p. 218,) as not being inconsistent with the principle there applied. *Heath* v. *Ross* was an action of trover for timber cut between the application for and date of a patent from the State, and its ensealing and delivery by the Secretary of State. The title was held to relate back to the first act, so as to entitle the plaintiff to maintain an action against a mere wrongdoer, for the value of the timber cut and carried away in the meantime. *Musser* v. *McRae* was an action brought to recover the value of timber cut by trespassers from indemnity lands selected by the agent of certain railroad companies, intermediate the application for selection and the patenting of the lands. To permit a recovery, it was held that the title evidenced by the patent related back at least to the date of the application for

selection. · It was declared that the doctrine of relation was properly applied to the case, "for the advancement of justice, and to give the full effect to the grant it was intended to have." Among other cases relied upon by the Minnesota court as sustaining the application made of the doctrine was the decision of this court in *Landes* v. *Brant*, 10 How. 348.

Concluding, as we do, that the money in question belongs to the appellee as the successor in interest of the party for whose benefit the application for selections was made, it results that the judgment of the Court of Claims must be

*Affirmed.*