UNITED STATES v. INMAN-POULSEN LUMBER CO.

(Circuit Court of Appeals, Ninth Circuit.   May 1, 1916.)

No. 2687.

PUBLIC LANDS ☞88(2)—RAILROAD GRANT—EFFECT OF RELINQUISHMENT—
RIGHT TO RECOVER FOR TIMBER UNLAWFULLY REMOVED.

Act July 1, 1898, c. 546, 30 Stat. 597, 620, provided that lands within
the grant to the Northern Pacific Railroad Company, which had been
disposed of by the United States or occupied by settlers, might be relin-
quished to the United States, and other lands selected in lieu thereof, and
that on such relinquishment "such tracts shall be treated under the laws
* * * in the same manner as if no rights thereto had ever vested in
the railroad grantee." Held, that the effect of such relinquishment of
patented or unpatented lands was to revest title in the United States as
of the time of the grant, or at latest as of the time of acceptance of the
act by the railroad company, and to restore to the United States all rights
incident to the ownership of the land, including the right to pursue any
remedy for injury to the land, or for timber removed therefrom, as
against any person other than the railroad company or persons holding
under it.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 267; Dec.
Dig. ☞88(2).]

In Error to the District Court of the United States for the District
of Oregon; R. S. Bean, Judge.

Action at law by the United States against the Inman-Poulsen Lum-
ber Company.  Judgment for defendant (211 Fed. 679), and the United
States brings error.  Reversed.

The United States brings its writ of error to review the judgment of the
court below in sustaining a demurrer and dismissing the complaint in an
action brought to recover the value of timber cut upon land of the United
States. The complaint alleged in substance that the land at all the times re-
ferred to in the complaint was, and still is, public land of the United States;
that it became vested in the Northern Pacific Railroad Company by virtue
of the grant of Congress to that corporation of July 2, 1864, and by the
definite location of the road on September 22, 1882, and that a patent issued
therefor to the railroad company on May 24, 1895; that in the Act of Con-
gress of July 1, 1898, c. 546, 30 Stat. 597, it was provided that certain lands
within the grant, which prior to January 1, 1898, had been disposed of by the
United States or occupied by settlers, as provided in the act, might be relin-
guished by the railroad company to the United States, and other lands taken
in lieu thereof; that in accordance with that act the railroad company re-
linquished the said land in controversy to the United States, the land having
been listed for relinquishment by the Secretary of the Interior on May 2, 1905;
that on August 5, 1907, the railroad company deeded said land to the United
States, and the conveyance was accepted January 3, 1908; that by reason
of the foregoing facts and the provisions of the act that all right, title, and in-
terest of the railroad company in any lands relinquished under the act shall re-
vert to the United States, "and such tract shall be treated under the laws there-
of in the same manner as if no right thereto had ever vested in the said rail-
road grantee," the said land became and now is public land of the United
States, for all intents and purposes in the complaint set forth; that on Janu-
ary 28, 1908, the homestead application of one Stanley on said land was ac-
cepted by the officers of the General Land Office by virtue of his claim of
settlement thereon from and after the year 1891, for which he had made and
filed a homestead application on December 30, 1896; that on April 6, 1908,
said Stanley relinquished his homestead entry to the United States; that

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

while he was in the occupation of said land as a homestead settler, in the years 1900, 1901, 1902, and 1903, Stanley, with others, wrongfully and unlawfully cut and removed from his said homestead 1,100,000 feet of timber for sale and speculation, and not in the course of clearing and improving the land, which timber they wrongfully and unlawfully sold and delivered to the defendant in error; that the land has never been cleared, cultivated, or improved, and was not intended to be cleared, cultivated, or improved by said Stanley; that said timber was so cut and removed without the knowledge, consent, or permission of the railroad company or of the United States. The complaint alleges demand upon the defendant in error for the payment of $5,500, the value of said timber. The demurrer of the defendant in error to the complaint, on the ground that it failed to state facts sufficient to constitute a cause of action, was sustained by the court, and a judgment was thereafter entered dismissing the action.

Clarence L. Reames, U. S. Atty., and John J. Beckman, Asst. U. S. Atty., both of Portland, Or.

Cake & Cake, of Portland, Or., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The defendant in error contends that the United States has no cause of action to recover the value of the timber, for the reason that at the time when the timber was cut and removed from the land the title to both the land and the timber was vested in the railroad company. If the contention is correct, we have here a case in which a wrong has been committed for which there is no remedy, for the railroad company, having accepted the provisions of the act of 1898, and having relinquished the land and accepted other land in lieu thereof, can show no damage to itself on account of the unlawful cutting and removal of the timber.

From the allegations of the complaint it would appear that the chief value of the land was the timber standing thereon, and that while Stanley entered it ostensibly as a homestead, he entered it in fact for the purpose of cutting and removing the timber, which was sold to the defendant in error. The complaint alleges that this was done after the land had been patented to the railroad company, but that it was done without that company's knowledge or consent. It is clear that Stanley claimed no right under the railroad company's title. His claim was in opposition to that title. He cut and removed the timber, relying solely upon his right to do so as a homestead settler.

The right of the plaintiff in error to recover in the present case depends upon the act of 1898, and particularly upon that portion thereof which provides that, upon the delivery to the railroad of a list of the several tracts claimed by settlers or purchasers, all right, title, and interest of the railroad which it "may relinquish hereunder shall revert to the United States, and such tracts shall be treated under the laws thereof in the same manner as if no rights thereto had ever vested in the said railroad grantee." We are of the opinion that it is the meaning and purpose of the act to revest title in the United States as of the time of the grant to the railroad company, or at the latest as of the time of the acceptance by the railroad company of the act of 1898, and to restore to the United States all rights incident to the

ownership of such land, and, as included therein, the right to pursue any remedy for injury to the land, or for the timber removed therefrom, as against any person other than the railroad grantee, or persons holding under it. Stanley was not in privity with the railroad company. He claimed the land at all times under the homestead laws of the United States. The effect of the act is to reinvest the United States with the ownership of the land which he claimed, with all the rights at least that would have attached, had the land been deeded to the United States in 1898, immediately upon the acceptance of the terms of the act.

And such we think is the meaning of the decision in Humbird v. Avery, 195 U. S. 480, 25 Sup. Ct. 123, 49 L. Ed. 286, in which the court discussed the nature and purpose of the act of July 1, 1898, and held that it embraced all lands granted to the railroad company, whether patented or not, which had been settled upon or claimed in good faith by qualified settlers under color of title or claim of right under any law of the United States or ruling of the Interior Department. The court further held that the railroad company, after having accepted the provisions of the act, could do no act to affect the title to the lands which it held under the conditions specified in the act, and that all those lands became subject to the power conferred upon the Land Department by that act. The decision is necessarily based on the recognition of a right in the United States in the lands from and after the railroad company's acceptance of the terms of the act, and its meaning is that after that date the railroad company could not sell the land from which the timber in controversy here was removed, nor could it destroy, or give authority to others to destroy, the value of that land, which consisted in the timber thereon.

The case is different from United States v. Loughrey, 172 U. S. 206, 19 Sup. Ct. 153, 43 L. Ed. 420, cited by the defendant in error. In that case the United States had granted lands in fee to the state of Michigan on the condition subsequent that, if the railroad should not be completed within 10 years, the unsold lands should revert to the United States. It was held that after the forfeiture and reversion the United States could not maintain an action for trespass against a person who had entered upon and cut and removed timber from the land during the time while the state held the title. The court said:

"Whilst the timber was standing, it constituted a part of the realty; being severed from the soil, its character was changed. It became personalty; but its title was not affected. It continued, as previously, the property of the owner of the land, and could be pursued wherever it was carried."

But in that case there was no exchange of lands, and the language of the act restoring the property to the United States contained no provision revesting the same in the same manner "as if no rights thereto had ever vested in the railroad grantee"; but it simply provided, "There is hereby forfeited to the United States, and the United States may resume title," etc. To resume title under such an act is to take it again as of the date of the forfeiture. In the case at bar, although in the original grant there was no provision that the United States

should again be vested with the property in the manner ultimately accomplished by the act of 1898, the acceptance of the terms of that act by the railroad company subjected it to all the provisions of the act with the same effect as if those provisions had been incorporated in the original grant. Stanley was in no position to question the provisions of the act, for he never recognized any right in the railroad company.

The United States having acquired by the railroad's acceptance of the act an inchoate right which subsequently became merged in the legal title, justice requires that the relinquishment to the United States be held to relate to the date of the acceptance. The doctrine of relation is defined in Gibson v. Chouteau, 13 Wall. 92, 100, 20 L. Ed. 534, as follows:

"By the doctrine of relation is meant that principle by which an act done at one time is considered by a fiction of law to have been done at some antecedent period. It is usually applied where several proceedings are essential to complete a particular transaction, such as a conveyance or deed. The last proceeding which consummates the conveyance is held for certain purposes to take effect by relation as of the day when the first proceeding was had."

That doctrine was applied in Knapp v. Alexander Co., 237 U. S. 162, 35 Sup. Ct. 515, 59 L. Ed. 894, a case in which, at the time when the timber was cut, the plaintiff had neither the possession nor the right of possession of the land, and had done no more than to file a homestead entry. The court held that the title long afterwards given him by his patent related back to the filing of the entry, and that at the time when the timber was cut he had an inchoate title upon which he could thereafter bring an action for the value of the timber cut. So in Peyton v. Desmond, 129 Fed. 1, 63 C. C. A. 651, a case before the Circuit Court of Appeals for the Eighth Circuit, it was shown that Desmond, the plaintiff, made a homestead settlement in 1890, and 8 years later received patent for the land. One Judd also settled on the land at the same time with Desmond, and upon adverse proceedings it was at first ruled that Judd was entitled to the homestead. In 1893 Judd commuted his entry and obtained a certificate of title. A further contest resulted in a final decision in favor of Desmond. The question presented by the case was whether the defendant, to whom Judd had conveyed his interest in 1893, and who in 1893 and 1894 had cut the timber from the land, the legal title to which then still remained in the United States, could be required to answer to the plaintiff in trover for the timber so cut and removed. The court answered the question in the affirmative, and said:

"From what has been said, it is clear that the defendants are liable to the plaintiff or to the United States for the conversion of the timber, and that their only lawful concern is that they be made to respond only to the rightful claimant."

And the court held that the plaintiff's title under the patent related back to a time anterior to the cutting of the timber, notwithstanding that at the time when the timber was cut the plaintiff's right was subject to the power of Congress to terminate the same. Another case.

illustrating the application of the doctrine of relation is United States v. Anderson, 194 U. S. 394, 24 Sup. Ct. 716, 48 L. Ed. 1035.

To hold the defendant in error herein liable by relation upon the facts alleged in the complaint is not to create by relation a liability which otherwise would not exist. There can be no question but that the acts of Stanley and the defendant in error created at the time when they were done a liability, certainly to the railroad company, if not to the United States. So far as the complaint states the facts, no rights of innocent third person will be impaired by the application of the doctrine of relation, nor will its application result in injustice to any one.

The judgment is reversed, and the cause is remanded for further proceedings.

